**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------X

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 12 Cr. 185 (LAP) |
| -against- | AFFIRMATION IN SUPPORT |
| **JEREMY HAMMOND,** | |
| Defendant. | |

----------------------------X

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF KINGS     )

ELIZABETH M. FINK, an attorney admitted to practice law before this Court, under pain and penalty of perjury, affirms as follows:

1. I represent the above-named defendant pursuant to the Criminal Justice Act, and make this affirmation in support of his motion for bail pursuant to 18 USC § 3142(g) and the Fifth, Sixth, and Eighth Amendments to the United States Constitution.

2. On March 6, 2012, Jeremy Hammond was arrested at his apartment in Chicago on a federal criminal complaint originating from this Court alleging computer hacking crimes targeting entities, both private and governmental, engaged in policing and security activities. At the time of

this arrest, Mr. Hammond, 27 years old, was well known to state and federal authorities as a political activist with a particular expertise in computers. From an early age, Mr. Hammond had chosen a political course. He viewed the world as a place of great injustice that compelled an active resistance. Along with unknown numbers of activists worldwide, he fought for open accountability and progressive movements. In 2006, Mr. Hammond was indicted in the Northern District of Illinois for violation of 18 USC 1030(a)(2)(C) and 2. *United States v. Hammond*, 06 Cr. 380 (N.D. Ill. filed May 23, 2006). The allegations were that he hacked into Patriot Warrior, an extremist right-wing organization known for disrupting peace rallies. He was released on an unsecured $10,000 bond subject to limitations on his computer usage. Mr. Hammond pled guilty and was sentenced on December 7, 2006, to 24 months imprisonment. He was permitted to self-surrender in January 2007 and served out his term.

    3.    At the time of Mr. Hammond's arrest herein, his house was searched; his computer was taken, and a large quantity of materials was seized. He was held in MCC-Chicago pending removal to the Southern District and transferred to MCC-NY on March 16, 2012.

    4.    On March 17, 2012, Mr. Hammond was brought to

Magistrate's Court and arraigned on the Criminal Complaint. I was assigned as counsel pursuant to CJA and the government moved for preventive detention. In addition, press reports revealed the continuous involvement of the government provocateur—cooperator, Hector Monsegur. Ten months after Hector Monsegur began working for the government, Mr. Hammond was charged with being a member of a conspiracy called "Anonymous" to engage in cyber attacks on businesses and governments, including the Arizona Department of Public Safety (DPS) and the global intelligence firm Stratfor (a.k.a. Strategic Forecasting).

    5.  As outlined in the accompanying memorandum of law, Jeremy Hammond will not pose a risk of flight or danger to any person or community and is an ideal candidate for bail release. However, an additional reason exists for bail in this case. Given the staggering quantity and nature of discovery, Mr. Hammond's continued detention will make it impossible for counsel to adequately prepare for trial.

    6.  The discovery consists of 5 discs containing over 100,000 Bates-stamped pages – roughly equivalent to 40 file boxes of documents - and a computer hard drive containing over 158 gigabytes of compressed data which requires technical expertise to view and cannot be opened on our computers. According to the government, the hard drive

contains (1) a forensic image of Mr. Hammond's computer, (2) a copy of the contents of an onion server that Mr. Hammond allegedly provided to the CW, and (3) a compressed copy of the contents of a server allegedly provided by the CW to Mr. Hammond onto which data from Stratfor was allegedly loaded.

    7.   We have been consulting with Jerry Tritz, the CJA Case-Budgeting Attorney for the Southern District of New York. Mr. Tritz referred us to Emma Greenwood, a Coordinating Discovery Attorney (CDA) in CJA cases. Ms. Greenwood has reviewed the protective order issued by the Court and understands that she is bound by the terms of the order. As the majority of these documents were not provided by the government in a searchable format, Ms. Greenwood utilized OCR text-recognition software to help defense counsel navigate these materials more quickly.

    8.   As for the inaccessible contents of the computer hard drive, Ms. Greenwood suggested that we contact Access Data to conduct a pre-analysis of the information on the drive. According to a Proposed Statement of Work prepared by Access Data, the original drive contained 158.8 gigabytes of data and 43,305 separate files. Access Data prepared a proposal to De-NIST these files and make them more accessible to defense counsel. "De-NIST"ing is the

process of identifying these files so that a decision can be made if they should be set aside or removed from a discovery database. The types of files that are removed are application files and other files that are not user-generated. This would reduce the quantity of data to 10 gigabytes and 42,532 separate files, which would eliminate 732 files. Access Data will also host the remaining data on its servers, and can provide it on a hard drive. Review of this material is much easier on Access Data's server, where they provide search assistance, project management, and general expertise in accessing and understanding the various file types.

9.  As the Court is aware, under the terms of the protective order, Mr. Hammond may only view the majority of these materials in the presence of defense counsel or paralegals who are members of defense counsel's staff. Moreover, even without the protective order, Mr. Hammond is prohibited by the Bureau of Prisons from using any computers – even those without Internet access – outside of the presence of counsel. Under these conditions, we conservatively estimate that the necessary review of this material with the defendant could take years, with a paralegal visiting the jail five days a week. Further, while we can burn the De-NISTed computer files to disc to

share them with our client, we will not be able to make uses of Access Data's data hosting, organizational systems, or assistance from inside the MCC.

10. In light of the complexity and quantity of discovery materials in this case, and the restrictions placed on their review, Mr. Hammond's right to a fair trial is compromised. Under present conditions, neither Mr. Hammond nor his counsel can conduct meaningful review of the discovery. I cannot provide him with the effective assistance of counsel and cannot adequately prepare for trial. This reality, coupled with the fact that conditions exist that will reasonably assure the safety of the community and the defendant's appearance in court, necessitate bail release in this case.

WHEREFORE it is respectfully requested that this Court grant the defendant's bail motion and grant such other and further relief as may be just and proper.

*Elizabeth M. Fink*

_____
Elizabeth M. Fink

Dated:   Brooklyn, New York
         November 12, 2012