```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------X

UNITED STATES OF AMERICA              MEMORANDUM OF LAW IN
                                      SUPPORT OF DEFENDANT'S
                                      MOTION FOR BAIL
        -against-
                                          12 Cr. 185 (LAP)
JEREMY HAMMOND,

              Defendant
----------------------------X
```

**INTRODUCTION**

This memorandum is submitted in support of Jeremy Hammond's motion for bail pursuant to 18 U.S.C. § 3142(g) and the Fifth, Sixth, and Eighth Amendments to the United States Constitution. As addressed herein, these laws require that Mr. Hammond be released on bail. There is a presumption favoring bail release for the offense with which he is charged. Mr. Hammond is a perfect candidate, as he has demonstrated that he will not pose a risk of flight or danger to any person or the community. Furthermore, given the staggering quantity of discovery and complexity of the charged offense, Mr. Hammond's continued detention will make it impossible for counsel to adequately prepare for trial.

**STATEMENT OF FACTS**

Jeremy Hammond is 28 years old and a lifelong resident of Chicago, Illinois. Mr. Hammond graduated from Glenbard East High School in 2003. He has worked consistently since he was 16 years old, and has held jobs as a web developer, a technician at an Apple Computer repair center, a guitar teacher, and a math instructor at a neighborhood community center. Prior to his arrest on March 5, 2012, he had been employed since 2008 as a web developer with Rome & Company, an advertising agency and brand consultancy company based in Chicago. He also volunteered once a week serving food to the needy with the Chicago chapter of Food Not Bombs. His family is aware of the charges against him, and is supportive and willing to sign for him. Mr. Hammond has never owned a passport and has never left the country aside from one trip to Canada with his parents when he was six years old.

In 2006, Mr. Hammond was indicted in the Northern District of Illinois for fraud activity involving computers in violation of 18 USC 1030(a)(2)(C) and 2, *United States v. Hammond*, 06 Cr. 380 (N.D. Ill. filed May 23, 2006), for

hacking into Patriot Warrior, an extremist right-wing organization known for disrupting peace rallies. He was released on an unsecured $10,000 bond subject to limitations on his computer usage. Mr. Hammond pled guilty and was sentenced on December 7, 2006, to 24 months imprisonment. He self-surrendered in January 2007 and served out his term. Prior to this incarceration, Mr. Hammond worked at Rome & Company for two years – from 2004 through 2006.

Mr. Hammond is charged in the instant indictment with two counts of conspiracy to commit computer hacking, 18 USC 1030(a)(5)(A), 1030(c)(4)(B)(i), and 1030(c)(4)(A)(i)(I), one count of computer hacking, 18 USC 1030(a)(5)(A), 1030(b), 1030(c)(4)(B)(i) and (2), one count of conspiracy to commit to access device fraud, 18 USC 1029(a)(3) and 1029(a)(5), and one count of aggravated identity theft, 18 USC 1028(A) and (2), in connection, *inter alia*, with the release of corporate internet files and emails of the private security firm Stratfor to Wikileaks. These charges arise from Mr. Hammond's alleged participation in the activist hacker group "Anonymous."

**LEGAL ARGUMENT**

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., a court generally "must release a defendant on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance when required and the safety of the community." *United States v. Madoff*, 586 F. Supp. 2d 240, 246 (S.D.N.Y. 2009); 18 U.S.C. § 3142(c)(1)(B). It is properly viewed as a permissible regulatory, or preventative, measure for use by the courts, rather than being punitive in nature. *See United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 2101 (1987). Significantly, in enacting the Bail Reform Act, Congress recognized "the traditional presumption favoring pretrial release 'for the majority of Federal defendants.'" *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) *cert. dismissed* 479 U.S. 978, 107 S.Ct. 562 (1986). Accordingly, the Supreme Court has observed that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755, 107 S.Ct. at 2105.

"Because the law thus generally favors bail release, the government carries a dual burden in seeking pre-trial

detention. First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (internal citations omitted). The government carries an even higher burden if it seeks to prove that the defendant is dangerous, in which case its burden is proof by clear and convincing evidence. *United States v. Vasconcellos*, 519 F. Supp. 2d 311, 316 (N.D.N.Y. 2007).

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the court must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial

>     resources, length of residence in the community,
>     community ties, past conduct, history relating to
>     drug or alcohol abuse, criminal history, and
>     record concerning appearance at court
>     proceedings; and
>       (B) whether, at the time of the current offense
>     or arrest, the person was on probation, on
>     parole, or on other release pending trial,
>     sentencing, appeal, or completion of sentence for
>     an offense under Federal, State, or local law;
>     and
>   (4) the nature and seriousness of the danger to any
>   person or the community that would be posed by the
>   person's release.
> 18 U.S.C. § 3142(g).

"In applying the factors to any particular case, the court should bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) *citing* S. Rep. No. 225, 98th Cong., 2d Sess. 7, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3189.

**(1) The Nature and Circumstances of the Offense Charged and the Weight of the Evidence**

As addressed above, Mr. Hammond is charged with two counts of conspiracy to commit computer hacking, 18 USC 1030(a)(5)(A), 1030(c)(4)(B)(i), and 1030(c)(4)(A)(i)(I), one count of computer hacking, 18 USC 1030(a)(5)(A), 1030(b), 1030(c)(4)(B)(i) and (2), one count of conspiracy to commit to access device fraud, 18 USC 1029(a)(3) and 1029(a)(5), and one count of aggravated identity theft, 18

USC 1028(A). There is no question that the crimes charged are serious. However, under the Bail Reform Act, these charges do not give rise to a presumption that no conditions of release will reasonably ensure the safety of the community. To support its request for detention, the government must therefore carry its burden of proving first actual risk of flight by preponderance of the evidence, or dangerousness by clear and convincing evidence, and then the absence of any combination of conditions that could reasonably assure Mr. Hammond's appearance when required.

The seriousness of the charges that Mr. Hammond is facing does not place him in that "limited group of offenders" who should be denied bail pending trial. *See Shakur*, 817 F.2d at 195. In fact, in the past year, district courts have approved the pretrial release of defendants facing similar computer hacking charges. As with Mr. Hammond, the charges against these defendants arise from their alleged participation in the Anonymous hacker collective and its offshoots. *See, e.g., United States v. Collins et. al.,* 11 Cr. 471 (C.A.N.D.) (Dkt ## 122 and 237); *United States v. Lance Moore*, 11 Cr. 3561 (D.N.J.) (Dkt # 9); *United States v. Scott Matthew Arciszewski*, 11 Cr. 622 (F.L.M.D) (Dkt # 8 in 11 mj 1359). Furthermore,

after a recent FBI investigation dubbed "Operation Card Shop," a number of defendants charged in a global hacking scheme that involved buying and selling bankcard details, stolen identities, counterfeit documents, and sophisticated hacking tools were granted bail release in the Southern District of New York. *See, e.g., United States v. Christian Cangeopol,* 12 mj 01667 (S.D.N.Y.) (Dkt # 4).

The second factor of § 3142(g)—"the weight of the evidence against the person"—requires the Court to consider evidence proffered by the government that it intends to use at Mr. Hammond's trial. However, even if the government has substantial evidence that Mr. Hammond participated in the offenses outlined in the indictment, there is no reason to conclude, on the basis of such evidence, that he is unlikely to observe his legal obligation to attend a trial that may result in the imposition of a substantial sentence. Rather, Mr. Hammond's history of compliance while on bail release while facing similar charges in the Northern District of Illinois suggests that the opposite is true. In that case he was released on an unsecured $10,000 bond subject to limitations on his computer usage.  He remained free on bail for over six months, appearing at each of his court dates, and voluntarily surrendered

himself following his sentencing.

### (2) The History and Characteristics of the Person

Mr. Hammond has lived in the same community for his entire life, maintained consistent employment, and participated in volunteer work. He has been self-sufficient since age 18, and fully responsible for rent and other monthly expenses. He has limited financial resources, and has shown neither the ability nor the inclination to flee. Mr. Hammond has strong family ties; his mother, grandmother and brother are all willing to co-sign his bond, as are a number of close friends. Mr. Hammond has sufficient community support to ensure he abides by the conditions this Court imposes.

There are no factors present in this case that would demonstrate that Mr. Hammond is an irremediable flight risk. Mr. Hammond does not, for example, have significant financial resources with which to finance flight, *cf. Sabhnani*, 493 F.3d at 76, he has never fled in the past, *United States v. Gonzales Claudio*, 806 F.2d 334 (2d Cir. 1984) (14-month pre-trial detention violated due process where, *inter alia*, there was no evidence that defendants had ever fled from lawful authority), he does not have citizenship or family ties in another country, *cf. United*

*States v. Kirkaldy*, 1999 U.S. App. LEXIS 10782 (2d Cir. May 26, 1999), nor does he have a history of travel and residence in other countries, *cf. United States v. Shelikhov*, 4 68 Fed. Appx. 54, 56 (2d Cir. 2012).

Mr. Hammond's significant family and community ties, coupled with his demonstrated compliance when granted bail release in his prior federal case weigh strongly in favor of pretrial release in this case. There are clearly conditions that would reasonably assure Mr. Hammond's presence in court.

### (4) The Nature and Seriousness of the Danger to Any Person or the Community

Mr. Hammond's release would not result in any danger to any person or to the community. In the computer hacking cases cited above, district courts have militated against any potential danger posed by pretrial release by either imposing special restrictions on the defendants' computer use, or by permitting unrestricted computer use subject to monitoring by pretrial services. Such monitoring would ensure that Mr. Hammond would not pose a danger to the community through repetition of his alleged offenses, and would make the government instantly aware of any attempt to do so.

### (5) Due Process Considerations

Although the Speedy Trial Act, 18 U.S.C. § 3161 et seq., is designed to ensure that criminal matters are brought to trial expeditiously, in reality, it often takes many months before a complex case can be tried. Preventive detention for many months, without a finding of guilt, raises a serious constitutional question, and the length of the defendant's detention must be considered in a bail application such as the present one. Given the voluminous amount of discovery in this case and Mr. Hammond's intention to go to trial, there is a very high risk that continued pre-trial detention would result in a due process violation.

Pretrial detention constitutes punishment in violation of the Fifth Amendment's Due Process Clause when it is excessive in relation to non-punitive purposes of detention, such as "preventing danger to the community," *Salerno*, 481 U.S. at 746–47, or "ensur[ing] [a defendant's] presence at trial," *Bell v. Wolfish*, 441 U.S. 520, 536, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Due process sets no bright-line limit on the length of pre-trial confinement, but courts have found prolonged pre-trial detention to

violate due process when insufficiently justified by other factors. *See*, *e.g.*, *United States v. Ojeda Rios*, 846 F.2d 167, 168-69 (2d Cir. 1988) (holding unconstitutional pretrial detention for thirty-two months without trial date); *United States v. Gatto*, 750 F. Supp. 664, 665 (D.N.J. 1990) (although court still considered defendants dangerous to community, 15-month detention had become punitive under due process clause and required release on conditions pending trial); *United States v. Khashoggi*, 717 F. Supp. 1048, 1051 (S.D.N.Y. 1989) (finding that likelihood of a somewhat prolonged pretrial detention weighed in favor of defendant's bail application); *United States v. Lofranco*, 620 F. Supp. 1324, 1326 (N.D.N.Y. 1985) (while releasing defendant would create potential dangers to the public and to the integrity of his trial, danger was outweighed by liberty interest of defendant who had already been held for six months); *Gonzales Claudio*, 806 F.2d at 341.

  Mr. Hammond has been detained for over eight months, since March 5, 2012, the date of his arrest. To date, the discovery in this case consists of 5 discs containing over 100,000 Bates-stamped pages – roughly equivalent to 40 file boxes of documents - and a computer hard drive with over

40,000 separate user-generated files. The vast majority of this discovery is governed by the Court's protective order, which prohibits defense counsel from leaving these materials with Mr. Hammond at the Metropolitan Correctional Center. As addressed more fully in counsel's Affirmation, under these conditions, a full review of this material could take years, preventing Mr. Hammond from participating meaningfully in his own defense and depriving him of his right to the effective assistance of counsel and a fair trial.

A consideration of the factors set forth at 18 U.S.C. § 3142(g) therefore demonstrates that the conditions proposed herein would assure Mr. Hammond's appearance and the safety of the community.

**THE PROPOSED CONDITIONS**

We propose that the following combination of conditions will assure both the safety of the community and Mr. Hammond's appearance in court:

1. A $200,000 bond, secured by the signatures of five financially responsible parties including family members, close friends, and attorneys not associated with this case, and two properties belonging to family

   friends with equity in excess of $30,000. This is twenty times the amount of Mr. Hammond's unsecured bond in his previous federal case, in which he appeared at each of his court dates, and voluntarily surrendered to serve his sentence.

2. Residence in New York City, and pre-trial supervision. Mr. Hammond would reside in the home of a New York City attorney and financially responsible person who would also be a signatory to his bond. Mr. Hammond would be proximate to the Southern District Courthouse and pre-trial services, as well as readily accessible to his attorneys and available to review the discovery in this case.

3. Monitoring of Mr. Hammond's computer usage by pre-trial services.

**CONCLUSION**

For the reasons set forth above, and in the attached Affirmation, we respectfully submit that this Court should grant bail to Mr. Hammond under the terms set forth herein and grant such other and further relief as may be just and proper.

                                    Respectfully Submitted,

                                    *Elizabeth M. Fink*

                                    ELIZABETH M. FINK
                                    Attorney for Jeremy Hammond
                                    36 Plaza Street Suite 1G
                                    Brooklyn, NY 11238
                                    (718) 783-3682