UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

UNITED STATES OF AMERICA

        -against-

                                                                 12 Cr. 185 (LAP)

JEREMY HAMMOND,

        **Defendant**
-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR DISQUALIFICATION

### PRELIMINARY STATEMENT

Jeremy Hammond respectfully submits this memorandum of law in support of his motion for disqualification under 28 U.S.C. §455. As detailed below, the status of this Court's husband as both a victim of the alleged crimes of the accused and an attorney to many other victims creates an appearance of partiality too strong to be disregarded, requiring disqualification.

### STATEMENT OF FACTS

Mr. Hammond is charged in the instant indictment with two counts of conspiracy to commit computer hacking, 18 USC 1030(a)(5)(A), 1030(c)(4)(B)(i), and 1030(c)(4)(A)(i)(I), one count of computer hacking, 18 USC 1030(a)(5)(A), 1030(b), 1030(c)(4)(B)(i) and (2), one count of conspiracy to commit to access device fraud, 18 USC 1029(a)(3) and 1029(a)(5), and one count of aggravated identity theft, 18 USC 1028(A) and (2), in connection with the release of corporate internet files and emails of the private security firm Strategic Forecasting to Wikileaks (the "Stratfor hack").

The complaint against Mr. Hammond, filed on March 5, 2012, alleges as follows:

> HAMMOND and others gained unauthorized access to computer systems used by Stratfor, a company which provides information analysis services for its clients, and, among other things, defaced Stratfor's website; stole confidential data from Stratfor's computer network, including Stratfor employees' emails, as well as personally identifying information and credit card data for Stratfor's clients; publicly disclosed at least some that [sic] data by dumping it on certain Internet websites; and deleted data on Stratfor's computer network.

Earlier this year, a federal class action lawsuit was filed in the Eastern District of New York by Stratfor clients who were victims of the hack.  *See Sterling v. Strategic Forecasting, Inc.*, No. 12-cv-297 (E.D.N.Y., filed Jan. 20, 2012). [1] According to the class-action lawsuit, Stratfor clients suffered

> the financial expenses associated with third-party use of credit card and other financial information, the expense of securing replacements of compromised credit card numbers, online passwords, and the employment of monitoring services to protect against fraud...exposure to computer viruses targeting corporations, individuals, and other entities using the email addresses and personal information obtained; embarrassment and invasion of privacy due [sic] public exposure of private email communications; loss of use of the Stratfor website that Plaintiffs... paid subscription fees to access.

*Id.*  The class action was quickly settled. The settlement agreement, approved by the district court in November, is expected to cost Stratfor $1.75 million.

Approximately a week ago, counsel for Mr. Hammond (along with the general public) learned from news reports[2] that Thomas J. Kavaler, the husband of this Court, was among the victims of the Stratfor hack.  A list made available online for users to check if they are affected lists the leaked accounts with the passwords removed at http://dazzlepod.com/stratfor/. This list includes Mr. Kavaler's email address, which

---

[1]   A partial timeline of pastebin dumps is available at http://www.cryptome.org/0005/stratfor-hack.htm.
[2]   Some of the news articles covering this story are attached as  Exhibit B.

matches the email address listed for Mr. Kavaler on the website for the law firm Cahill Gordon & Rendell LLP, ("Cahill Gordon"). Mr. Kavaler has been a partner at Cahill Gordon since 1980, this Court was a partner at Cahill Gordon before entering the judiciary, and Mr. Kavaler currently serves as one of only six members of the 260-attorney law firm's executive management committee. Major clients of Cahill Gordon, including Merrill Lynch and AIG, were also victims of the Stratfor hack.

Merrill Lynch appears to have been particularly impacted by the hack; over 800 accounts associated with Merrill Lynch email addresses were compromised. Cahill Gordon has overseen hundreds of millions of dollars in investment banking arrangements for Merrill Lynch. In 2006, Cahill Gordon acted as special counsel to Merrill Lynch, in their capacity as Administrative Agent, on an investment banking arrangement with another Stratfor client, AES Corporation, brokering a $600,000,000 credit agreement between the two companies.[3] According to a news release dated November 27, 2012 on the Cahill Gordon website, the firm recently represented Merrill Lynch in another investment banking deal involving an offering of $350,000,000.[4]

Upon information and belief, more than twenty Cahill Gordon clients were victims of the Stratfor hack, which compromised over 3500 separate Stratfor accounts associated with these clients.[5] In addition, Mr. Kavaler, on behalf of Cahill Gordon, represents a number of Stratfor victims in separate ongoing litigation.[6]

---

[3] See http://www.scribd.com/doc/115252485/AES-CORP-10-Q-20090807-EXHIBIT-10
[4] See http://www.cahill.com/news/legal_news/101542
[5] A non-exhaustive search of the dazzlepod list of Statfor clients reveals accounts with AIG, PNC Bank, Barclays, CNX Gas, Merrill Lynch, AES, Bank of America, Consol Energy, UBS, Forbes Media, Morgan Stanley, MCSI, Praxair, JP Morgan, Citigroup, Wells Fargo, Deutsche Bank, Credit Suisse, Willkie Farr & Gallagher LLP, Keefe Bruyette & Woods Inc., Edward D. Jones & Company LLP, all of which are clients of Cahill Gordon & Rendell.
[6] According a PACER search, Mr. Kavaler currently represents Willkie Farr & Gallagher LLP in *Management Company, Inc. v. Willkie Farr & Gallagher LLP et al*, 1:11-cv-07045-PGG (SDNY); Keefe Bruyette & Woods, Inc in *Tepper v. Keefe Bruyette & Woods Inc et al*, 3:11-cv-02087-L (TXND);

In 1992, this Court, in a written submission to the Senate Judiciary Committee in connection with her confirmation as a federal judge, made the following declaration:

> I expect to recuse myself in all cases in which either of the two law firms with which I have been associated represents a party. That recusal with respect to Cahil Gordon & Reindel would continue for so long as my husband continues as a member of that firm...I also expect to recuse myself with respect to clients for whom my husband does a significant amount of work. In sum, I expect to follow the Code of Judicial Conduct with respect to recusal.

Exhibit C.

## LEGAL ARGUMENT

Under 28 U.S.C. § 455(a) a judge is required to disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." This standard was intended to foster public confidence in the judicial system by requiring disqualification "if there is a reasonable factual basis for doubting the judge's impartiality." H. Rep. No. 1453, 93d Cong., 2d Sess., 1974 U.S. Code Cong. & Admin. News 6355. The statute also requires a judge to disqualify herself where she "knows that... [her] spouse... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). Thus, even absent a "financial interest" as the term is defined by Section 455(b)(4), the broad language of Section 455(b)(4) requires disqualification where "any other interest" is implicated. Likewise, Section 455(b)(5)(iii) requires disqualification where a judge or her spouse "[is] known by the judge to have an interest that could be substantially affected by the outcome of the

---

and Edward D. Jones & Company LLP in *Deathrow v. Fuld*, 1:09-cv-01230-LAK (SDNY).

proceeding." 28 U.S.C. §455(b)(5)(iii).

The test to be applied under section 455(a) is "whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man." *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976). This is an objective standard, dealing "exclusively with appearances," *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007). As such, it applies even if the judge is in fact impartial, is unaware of the circumstances giving the appearance of partiality, or is "pure in heart and incorruptible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988).

The Second Circuit has observed that "[a] bright-line rule also avoids mistaken but sensationalist accusations of corruption that are wrong -- even dead wrong -- but may further shake public confidence in the judiciary. We are fully confident of our observation that the judge had no real financial stake in the outcome. However, we are equally confident that Congress was right in apprehending that a headline (accurately) stating that the judge had entered a $92 million judgment to be shared by a corporation in which he owned $250,000 of stock would damage public confidence in the judiciary." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 128-129 (2d Cir. 2003).

Canon 3C of the Code of Conduct for United States Judges tracks Section 455; like the statute, it provides that "[a] judge shall disqualify himself or herself in a proceeding where the judge's impartiality might reasonably be questioned, including, but not limited to instances in which: ...(c) the judge knows that … the judge's spouse … has a financial interest in the subject matter or controversy or in a party to the proceeding, or


any other interest that could be affected substantially by the outcome of the proceeding."[7]

The issue here is two-fold; first, this Court's spouse is a victim of the alleged crimes of the defendant. This personal connection to the damage allegedly inflicted by Mr. Hammond is more than enough to raise the possibility in the mind of an objective observer that this Court could not be impartial in this case. Second, the Court's spouse has an attorney-client relationship with other prominent victims of the Stratfor hack, and his firm derives a percentage of its profits from its representation of these victims. As one of Cahill Gordon's senior partners and top litigators, Mr. Kavaler enjoys a substantial stake in the profits of the firm. These relationships give rise to the appearance of a "financial interest" or "other interest" under 28 U.S.C. §455(b)(4). As this Court has noted, "through my husband, I might be thought to have an indirect financial interest in the profits of the law firm of Cahill Gordon & Reindel." Exhibit C.  Indeed, this Court has previously disqualified itself in a civil action where one of the defendants was represented in other matters by her husband's law firm. *See In re: American International Group, Inc. 2008 Securities Litigation*, No. 08-cv-04772 (S.D.N.Y., filed May 21, 2008) docket entry # 63.

Recognizing the critical need to maintain the public's perception of an independent judiciary, judges in this District and throughout the country routinely exercise their discretion to disqualify themselves in order to uphold the principles embodied in Section 455, even when those jurists have not been convinced that the statute strictly requires disqualification in their circumstances. Such an approach is especially appropriate in the present case. From the outset, Mr. Hammond's arrest and

---

[7]   In fact, section 455 was amended in 1974 to "conform with the recently adopted" Code of Conduct. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1988).

prosecution has garnered significant press interest. In an action destined to be litigated in the public eye, it is particularly important to maintain an appearance of the utmost impartiality.

Finally, as evidenced by a spate of recent news articles highlighting this Court's perceived conflict of interest, public confidence has already been shaken. We have provided the Court with some of these articles. *See* Exhibit B. These articles demonstrate that the press and the American public are already questioning this Court's ability to be impartial in this matter. As this trial continues, and the victimization of this Court's spouse, and his connection to other victims, becomes more widely known, this perception of partiality will only further undermine confidence in the courts.

## CONCLUSION

For the reasons set forth above, and in the attached Affirmation, we respectfully request that this Court grant our motion for this case to be assigned to a different judge of this District, and grant such other and further relief as may be just and proper.

Respectfully Submitted,

*Elizabeth M. Fink*

ELIZABETH M. FINK
Attorney for Jeremy Hammond
36 Plaza Street Suite 1G
Brooklyn, NY 11238
(718) 783-3682