```
     D4adhamc
                          Conference
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    UNITED STATES OF AMERICA,                  New York, N.Y.
4              v.                               S1 12 Cr. 185 (LAP)
5    JEREMY HAMMOND,
6                Defendant.
7    ------------------------------x
8
                                                April 10, 2013
9                                               4:08 p.m.
10
     Before:
11
                    HON. LORETTA A. PRESKA,
12
                                                District Judge
13
14                          APPEARANCES
15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  ROSEMARY NIDIRY
17        THOMAS BROWN
              Assistant United States Attorneys
18
     Law Office of Elizabeth Fink
19        Attorneys for Defendant
     BY:  SARAH KUNTSLER
20        MARGARET RATNER KUNSTLER
          GRAINNE O'NEILL
21
22          - also present -
23   U.S. Marshal Sike Bennett
24
25
```

```
D4adhamc
                              Conference
```

1           THE COURT:  Good afternoon, ladies and gentlemen.
2    Won't you be seated.
3           United States against Jeremy Hammond.  Is the
4    government ready?
5           MS. NIDIRY:  Yes.  Good afternoon.  Rosemary Nidiry
6    and Thomas Brown for the government.
7           THE COURT:  Good afternoon.
8           And is the defense ready?
9           MS. S. KUNTSLER:  Yes, your Honor.  Sarah Kunstler,
10   from the Law Office of Elizabeth Fink, for Jeremy Hammond.
11   With me at counsel table are Grainne O'Neill and Margaret
12   Ratner Kunstler.
13          THE COURT:  Good afternoon.
14          How would you like to proceed, counsel?
15          MS. NIDIRY:  Your Honor, we would just like to update
16   the Court on where we are.
17          We have been in discussions with defense counsel about
18   a number of matters related to discovery and other matters
19   related to this case.  And we've discussed in terms of
20   scheduling what we would like to do is to ask, if the Court is
21   amenable, to adjourn for a few more weeks, to I believe the
22   date that your courtroom deputy suggested was April 30th at 2.
23   And at that point we would be able to come back and give the
24   Court a status update and particularly regarding scheduling for
25   this matter.

1              And I think I've discussed it with defense counsel and
2     they are amenable to that.
3              THE COURT:  Ms. Kunstler.
4              MS. S. KUNTSLER:  Yes.  We have no objection to that.
5     April 30th at 2 p.m. is fine for us.
6              THE COURT:  All right.  So we will get together on
7     April 30th at 2 p.m. to discuss scheduling, setting a trial
8     date, etc., etc.
9              What else, friends?  Anything else?
10             MS. NIDIRY:  We would ask that time be excluded
11    pursuant to the Speedy Trial Act until April 30th, as that will
12    permit us to continue to discuss matters and the defense to
13    review discovery and so it would be in the interest of justice.
14             THE COURT:  Any objection?
15             MS. S. KUNTSLER:  No objection, your Honor.
16             THE COURT:  In order to permit counsel to continue
17    their discussions about discovery and the like, time between
18    today and April 30th is excluded from calculation under the
19    Speedy Trial Act in the interest of justice.
20             Anything else?
21             MS. S. KUNTSLER:  Your Honor, we just wanted to
22    provide the Court with a little update on discovery.
23             THE COURT:  Yes, ma'am.
24             MS. S. KUNTSLER:  As the Court knows, since
25    mid-November -- since our appearance in mid-November we have

1     been working with the government to resolve discovery issues.

2              The government provided a laptop to MDC and a hard

3     drive for Mr. Hammond to use in January.  Mr. Hammond first had

4     access to that laptop on February 13th, and since that time he

5     has had a total of about eleven hours of access.  It was

6     complicated originally by his housing in the SHU, and then

7     later it is just a matter of coordinating it with --

8     communication and coordination in the facility, and we're

9     working with Adam Johnson to make that smoother.

10             We've also been able to bring the laptop to legal

11    visits, but we have had -- our procedure now is to make the

12    request 24 hours in advance to Adam Johnson.  And we have been

13    somewhat successful there also.  I would say out of about 14

14    legal visits, we have had the commuter a total of four times.

15    So I think we are batting about 20 percent with the legal

16    visits.  But, again --

17             THE COURT:  Is the issue that it is not being brought

18    up, or what is the problem?

19             MS. S. KUNTSLER:  I think part of the issue can be the

20    communication from lieutenants off duty and on duty.  Sometimes

21    the computer will be -- what happens is Mr. Johnson puts the

22    computer in the guard desk in the front.  Staff may change.

23    They may not know it is there even if it is there.  I think

24    that is largely what it is.  If Mr. Johnson is there when we

25    arrive, it is easier to resolve than if he is not in the

1   office.

2         You know, suffice it to say review with Mr. Hammond of
3   discovery has been proceeding rather slowly.  You know, part of
4   the reason for this, other than we're still working out the
5   kinks of getting to review it with him, is the technical nature
6   of the material.  We have been having Ms. O'Neill do the legal
7   visits for the discovery because she has a computer science
8   degree and that makes it all the much easier, but when
9   technical issues arise during her review with Mr. Hammond, she
10  often has to go back and do more research to figure out -- to
11  get answers on a number of matters and then come back and
12  review the same material over with him.  If they were -- if
13  they did permit access, she could click a link and do the
14  research there but the situation is what it is.

15        Another reason is the magnitude of the discovery
16  itself.  I was trying figure a way -- I mean, the Court knows
17  that discovery is voluminous in this case.  But I was trying to
18  think of an example of a piece of it.  One example is there is
19  about 59,000 pages of chat logs between July of 2011 and March
20  of 2012, which amounts to about 3.5 million lines of text,
21  involving about 45,000 participants.  And often these are chats
22  that are happening simultaneously on different documents at the
23  same time.  So it just takes a long time to coordinate what's
24  happening over the multiple documents.  So we are in touch with
25  the jail about trying to make this easier, but even when it

1   gets easier, it is still a lot of material.

2           We've also been in touch with the government about

3   discovery which we think may be missing from earlier

4   productions.  And we've given them a list of materials we think

5   might be missing, and they're going to get back to us and

6   we'll, hopefully, figure that out as well.

7           THE COURT:  OK.  That sounds like about as much as we

8   can do right now.  OK.

9           MS. S. KUNTSLER:  The only other matter is we wanted

10  to make a request, through the Court, to permit a courtroom

11  visit with Mr. Hammond and his mother, who is present here

12  today.

13          (A spectator indicated)

14          THE COURT:  Yes, ma'am.  Good afternoon.

15          How long do you anticipate that would take, please,

16  Ms. Kunstler?

17          MS. S. KUNTSLER:  And Mr. Hammond's brother, as well,

18  if possible.

19          I mean, about ten minutes, if the Court -- if the

20  marshals can do it and the Court will allow it.

21          THE COURT:  First, does the government have any

22  comment?

23          MS. NIDIRY:  Your Honor, we had discussed with

24  Ms. Kunstler prior to this conference about the meeting with

25  Mr. Hammond's mother, and that was what we had understood the

D4adhamc
                              Conference

1   request was going to be, and that we do not have an objection
2   to.
3              I mean, I guess if the brother -- you know, they want
4   to meet with the brother as well, that is fine as well.  But
5   just the mother and the brother, that is fine, if it is OK with
6   the marshals.
7              THE COURT:  Mr. Marshal, are we -- is that something
8   we can do?
9              MARSHAL BENNETT:  Your Honor, as per Marshal Service
10  policy, we don't allow for visitations, but if it is the
11  Court's request, we of course will oblige by the Court's
12  orders.
13             THE COURT:  Anything else, Ms. Kunstler?
14             MS. S. KUNTSLER:  No, your Honor.
15             THE COURT:  All right.  On this occasion, given where
16  we are in this case, I will permit it.
17             When I leave the bench I will ask everyone other than
18  Mr. Hammond's counsel, Mr. Hammond's mother and brother and the
19  marshals to leave the room.  Having done this once or twice in
20  the past, I understand that the rule is -- and a deputy will
21  correct me if I am wrong -- usually the folks at the defense
22  table turn their chairs around and the visitors sit in the row
23  that Mr. Hammond's mother is sitting in.  Touching and passing
24  of papers is not allowed but, obviously, chatting and the like
25  is.

```
     D4adhamc
                            Conference
1              Deputy, did I forget anything?
2              MARSHAL BENNETT:  No, your Honor.  That is correct.
3              THE COURT:  All right.  Granted.
4              MS. S. KUNTSLER:  Thank you, your Honor.
5              THE COURT:  Is there anything else?
6              MS. S. KUNTSLER:  No, your Honor.
7              THE COURT:  Anything else from the government?
8              MS. NIDIRY:  No, your Honor.
9              THE COURT:  All right.  Thank you, ladies and
10   gentlemen.
11             Everyone else is excused from the courtroom except the
12   people I noted.
13
14                             - - -
15
16
17
18
19
20
21
22
23
24
25
```