**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**--------------------------------------------------------**

**UNITED STATES OF AMERICA,**


      **-against-**                  **Case No. 12 Cr. 185 (LAP)**


**JEREMY HAMMOND,**

           **Defendant.**
**-----------------------------------------------------------**


**<u>EXHIBIT C  LETTERS OF SUPPORT FROM SELECTED SUPPORTERS</u>**

EXHIBIT C

Letters of Support from Selected Supporters

Table of Contents

Page

1       Daniel Ellsberg, Whistleblower

2       Jesselyn Radack, Whistleblower, Director, Government Accountability Project

3       Gabriella Coleman, Wolfe Chair in Scientific and Technological Literacy, McGill University

7       Peter J. Ludlow, Professor, Northwestern University

11      International Journalists

12      Neville Roy Singham, ThoughtWorks, Inc.

14      Richard Stallman, MacArthur Fellow, Lead developer of the GNU system, President, Free Software FoundationX

15      Baher Azmy, Legal Director, Center for Constitutional Rights

17      Michael Ratner, President Emeritus, Center for Constitutional Rights

19      Maureen Eckert, Professor, UMASS Dartmouth

21      Anthony Arthur, Stratfor Subscriber

22      Andy Bichlbaum and Mike Bonanno, The Yes Men

23      Azzurra Crispino, Professor, Central Texas Community College

25      Wendy Johnson, Human Rights Advocate, Balochistan, Pakistan

26      Alexa O'Brien, Journalist

27      Raven Rakia, Journalist, Bhopal, India

29      Chris Hedges, Journalist

30      Heidi Boghosian, The National Lawyers Guild

31      Nigel Parry, Journalist, Stratfor Subscriber

40      Charles Emmer, Professor, Emporia State University

42      Alnoor Ladha, Founding Partner, Purpose

44      Matt Wilder, Google

45      Stephen Duncombe, Professor, New York University

46      Tara Jill Ciccarone, Professor

51      Quinn Norton, Journalist

52      Vivian Lesnik Weisman, Journalist

55      Trevor FitzGibbon, Publicist

56      Kevin M. Gallagher,  Director, Free Barrett Brown

58      Kelsey Kauffman, Friend of Aaron Swartz

59      James Fennerty, Attorney

61      Carne Ross, Former Senior British Diplomat

62      Tracy Rosenberg, Executive Director, Media Alliance

63      Mustafa Al-Bassam

64      Scott Arciszewski

66      Raynaldo Rivera

67      Donncha O'Cearbhaill

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska,

I write to you requesting leniency in your sentencing of Jeremy Hammond. I do not know Jeremy personally, but I have been following the release of the materials from Stratfor and the news reports engendered by their release. As the first person prosecuted in the U.S. for unauthorized disclosure, I continue to be a supporter of the need for whistle blowing to maintain a constitutional republic and avoid grave governmental abuses. My decision to go public with the Pentagon Papers was a difficult one. At my own risk, I released them, just as Jeremy Hammond has done. I believe the actions taken by Jeremy Hammond need to be viewed in a context that considers the profound consequences of private surveillance of political activists in the United States.

I understand that Jeremy has pled guilty to obtaining and releasing materials from Stratfor Global Intelligence, one of the largest private contractors used by the U.S. intelligence community. According to Congresswomen Jackson Lee, who in June announced her intention to introduce legislation to assess the use of outside contractors, seventy percent of the U.S. intelligence budget is currently going to such firms. Because intelligence budgets are secret there is no way for the public to know how the contractors are getting the money or what they are doing with it. There is no effective oversight regarding the manner in which these organizations operate.

Jeremy's actions gave us important insight into this reality that we would not have otherwise understood. The Stratfor emails show how Stratfor employs a network of paid informants that includes government employees and journalists; how Stratfor was hired by Dow Chemical to spy on people seeking redress for the victims of the Bhopal environmental disaster, by the Texas Department of Public Safety to infiltrate the activist community of Occupy Austin, and by Coca Cola to gather intelligence on People for the Ethical Treatment of Animals (PETA). There is no evidence that the release of this information has adversely affected national security. Rather, these disclosures have proved to be a critical resource for the delivery of information to which the public is entitled. Indeed, these disclosures have generated public debate appropriate to life in a democratic society like ours. In determining the appropriate sentence in this case, I ask you to consider the motivation of the government to go against anyone who releases confidential information that puts it in a bad light.

I ask you to consider sentencing Jeremy to time served, which will allow him to be a productive member of this society.

Thank you for permitting me to have my say here, as I am very pained by Jeremy's plight and grateful for the doors he opened.

Respectfully yours,

Daniel Ellsberg

C 1



**GOVERNMENT ACCOUNTABILITY PROJECT**

1612 K Street, NW, Suite #1100
Washington, DC 20006
(202) 457-0034 | info@whistleblower.org

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 19, 2013

Dear Judge Preska,

I write this letter in support of a young man named Jeremy Hammond, who is a gifted computer programmer and a noble human being.

As the National Security & Human Rights Director for the Government Accountability Project, I work primarily with national security and intelligence community whistleblowers, including those from the Defense Department, Department of Homeland Security, NSA and CIA – with a special focus on torture, secret surveillance, secrecy, and political discrimination. I myself am a whistleblower; as a former ethics adviser to the United States Department of Justice, I publicly disclosed that the Federal Bureau of Investigation committed an ethics violation in their interrogation of John Walker Lindh without an attorney present, information that the Department of Justice attempted to suppress.

Jeremy Hammond awaits sentencing in your courtroom on November 15, 2013 for hacking into the computer systems of Strategic Forecasting, which revealed that the company had been spying on human rights activists and that it employs a network of paid informants including government employees and journalists. While I understand he faces up to ten years in prison for his actions, Mr. Hammond deserves maximum leniency. He performed an act of civil disobedience out of a deeply held belief that the people have a right to know what the government and unregulated corporations are doing behind closed doors against them. He is a patriot who only sought to provide transparency and expose the surveillance crimes being perpetrated on the American people.

I respectfully plead for leniency on behalf of Jeremy, and know that he is not deserving of a lengthy sentence for simply being an American citizen devoted to fundamental rights and a transparent government. Thank you for your time and consideration.

Sincerely,

*Jesselyn Radack*

Jesselyn Radack
Director, Nat'l Security & Human Rights
Government Accountability Project

C 2



**Department of Art History and Communication Studies**
*McGill University*
*Arts Building, W-255*
*853 Sherbrooke Street West*
*Montreal, QC, Canada  H3A 0G5*

**Département d'histoire de l'art et d'études en communication**
*Université McGill*
*Pavillon des arts, W-225*
*853, rue Sherbrooke ouest*
*Montréal, QC, Canada  H3A 0G5*

Tel. : (514) 398-6541
Fax:  (514) 398-7247
E-mail: ahcs@mcgill.ca

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska,                                      October 10, 2013

I hold the Wolfe Chair in Scientific and Technology Literacy at McGill University in Montreal, Canada. My teaching, research and writing all focus on computer hackers, with a particular focus on the development of Free and Open Source Software and the protest movement Anonymous. My research has guided me to view hackers as computer aficionados driven by an inquisitive passion for tinkering  and committed to an ethical version of information freedom. So often misrepresented in popular culture simply as the practice of a deviant subculture, my research demonstrates how hackers have recast and bolstered civil liberties—notably privacy and free speech—through new modes of technical production and political engagement.

I first met Jeremy Hammond online while researching Anonymous and subsequently met him in person (in prison) to interview him for my book on the topic. Given what I know about Jeremy Hammond and Anonymous, there is no doubt in my mind his participation and his actions were politically principled and constitutes civil disobedience. I write to you both to ask for leniency in sentencing and, foremost, to recognize his activity with Anonymous not as nefarious criminality but as politically motivated and conscientious acts.

To be clear: I support laws that address crime, both offline and online; I believe those who choose to break the law, even for political reasons, must be willing to accept and contend with the legal consequences of their actions. Nevertheless, punishment must be proportional to the act and reflect the social and political context in which they occur. To treat protesters as criminals distorts the democratic process, failing to take into account motives, intentions, and effects.

One reason it may be difficult to perceive his actions as activism has to do with the prevalent stereotypes and distortions surrounding both the figure of the hacker and the protest ensemble Anonymous. To be sure, there are a great many criminals who use their technical skills to hack into computer systems for fraud and financial gain. But there are tens of thousands of technologists all over the world who wear the badge of hacker with pride. For instance, the

C 3

inventor of the World Wide Web, Sir Tim Berners-Lee, described himself a hacker in a short poem on a mailing list announcing the suicide of another hacker and Internet activist, Aaron Swartz, who was facing decades in jail for downloading a large trove of copyrighted academic articles. Upending convention, as many hackers are inclined to do, he described the youthful Swartz as a hacker and wise elder:

> "Aaron dead.
> Wanderers in this crazy world,
> we have lost a mentor, a wise elder.
> Hackers for right, we are one down,
> we have lost one of our own."

Hacking may also confound as it plays host to a multitude of activities with no single institutional base and exhibits a political complexion of diverse hues and tones. For instance, on the technical front, a hacker's activity might consist of programming,  security research, network administration, or hardware tinkering. Ethically and politically, the variability is just as pronounced. There are free software hackers who write programs, like the web browser Firefox, which are rendered open source through the use of innovative licensing schemes (which they invented and which hold legal muster); hardware hackers who hang out in hacker spaces tinkering with gadgets; cryptographers who use complex mathematical algorithms to build tools in an attempt to prevent corporate and state snooping; security researchers, sometimes referred to as breakers, who hack into systems to improve security; and other hackers, like Jeremy Hammond, who belong to a hacktivist tradition, which dates back to the early 1990s, oriented towards the channeling of technical skills toward political ends.

Jeremy Hammond is thus part of a large, internally diverse and global community of hackers who are engaged citizens. Hackers, like Jeremy Hammond, love to debate not simply about the intricacies of technical design but also regarding the role, and place, of surveillance, privacy and access in society. They may not always agree on how to politically solve current problems—indeed, they are quite sectarian in their views—but an increasing number use their skills to engender political change. Some do so through policy work while others, like Jeremy Hammond, express themselves though direct action. In short, a decade-plus of anthropological fieldwork among hackers and like-minded geeks has led me to the firm conviction that these hackers and geeks are building a vibrant civil liberties movement. These hackers are committed to freeing information, insisting on privacy and fighting censorship, which in turn propels wide-ranging political activity.

Within this diverse and expanding ecology of hacker-based activity—one might even view it as an emerging digital environmentalism—Anonymous specializes in acts of disobedience, defiance and protest. Anonymous is a banner used by both individuals and groups unfurling operations across the globe, from Brazil to the Philippines, the Dominican Republic to India. Since 2008, activists have used the name to organize diverse forms of collective action, ranging from street protests against the Church of Scientology to web site defacements. Their iconography—Guy

C 4

Fawkes masks and headless suited men—symbolically asserts the idea of anonymity, which they embody in deed and words. It is adept at magnifying issues, boosting existing (and usually oppositional) movements and converting amorphous discontent into a tangible form.

Hammond was attracted to Anonymous for how it has become a wide open platform for very different types of people around the world to collectively work toward the goal of exposing corruption and lend a helping hand to existing movements, such as the Arab Spring of 2011. He was particularly keen to work with hackers to disclose corporate and government wrongdoing. We may not always agree on the path taken by him, or others in Anonymous, but it is vital to recognize their interventions as principled dissent. To treat protesters, such as Jeremy Hammond, as criminals distorts and violates the social contract that ostensibly undergrids political norms in a modern civil society which purports to honor and reserve a place for civil disobedience.

The law under which he is charged, the Computer Fraud and Abuse Act, tends to lead to far more extreme punishments when compared to analogous offline ones. Offline protesting tactics, such as trespass or vandalism of property, rarely results in catastrophic criminal consequences for participants, even for the leaders of social movements. Yet that same nuance, which fundamentally recognizes the intention and the consequences of actions, is rarely extended to online activities, especially when the CFAA is invoked. As a result, analogous behavior which might earn an offender an infraction or misdemeanor offline, with a penalty of perhaps thirty days in jail, is under the CFAA excessively punished as a felony. Criminal punishments for such acts can stretch out to years and fines are astronomically high, leaving dissenters destitute. The difference in punishments--and the willingness to even prosecute in the first place--have rendered similar acts wholly incomparable by our legal system. We routinely see offline actions such as trespass treated as political acts, while similar online behaviors are, without exception, deemed criminal.

My students, like many members of society today, spend much of their time online. They communicate with their family and friends though social media, rely on a search engines to kick start research, shop for all sorts of consumer goods, seek advice on anonymous boards during troubled times, read the news from dozens of different online publications and, increasingly, use the Internet as a political platform. The Internet is here to stay and as it weaves itself more tightly into the fabric of our everyday lives it is imperative to preserve the possibility of *different* online political organizational modalities. If punishments for intended acts of civil disobedience are excessive, an entire generation conditioned to engaging online will be robbed of the opportunity to exercise their beliefs through direct action and civil disobedience in their chosen venue. Civil disobedience already in its offline life, is only attractive to a small number of individuals willing to bear the possible consequences.

Dissent of the sort Jeremy Hammond participated in allows citizens to exercise their rights and demonstrate on behalf of the causes they embrace. His breach of the law was conscientious and

C 5

intentioned to expose wrong doing with the goal of catalyzing debate and stimulating change. The personal risk and sacrifice that inherently comes with political law breaking means very few citizens will ever elect to engage in civil disobedience; for the small class of individuals willing to stand up for what they believe in—as Jeremy Hammond stated he did—it is vital to preserve a space which allows them to do so.

Dr. Gabriella Coleman
Wolfe Chair in Scientific and Technological Literacy
Department of Art History & Communication Studies
McGill University

C 6



**Judd A. and Marjorie Weinberg
College of Arts and Sciences**
Northwestern University

**Department of Philosophy**
Kresge Hall Room 2-335
1880 Campus Drive
Evanston, Illinois 60208-2214

Phone 847-491-3656
Fax 847-491-2547



October 8, 2013

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska,

I am a professor of philosophy at Northwestern University in Evanston, Illinois. I became interested in hacktivist actions many years ago when I worked in the computer industry. Since then I have followed the legal cases of hacktivists and I have also studied the motives and strategies of hacktivists in some detail.

I am writing to ask for leniency in the sentencing of Jeremy Hammond. I have not met Jeremy, but I have met his twin brother, his girlfriend, and a number of his friends in the Chicago activist community. I am not an activist, but I do believe that what Jeremy did in his brief career as a hacker was an act of civil disobedience that was measured, and entirely appropriate under the circumstances. You may not agree with me on this point, but I hope that the following considerations will show that Jeremy's actions were not done of malice, but constituted a genuine and important attempt to help all of us. And I do mean all of us.

In one of the most referenced allegories in the Western intellectual tradition, Plato described a group of individuals, shackled inside a cave with a fire behind them, able only to see shadows cast upon a wall by the people walking behind them. In Plato's story, the shackled individuals mistook the shadows for reality. To see things for what they really are, these individuals needed to become unshackled, observe that they had been looking at mere (and deceptive) representations, and subsequently find their way outside the cave so that they could view the world correctly. The job of the truth-seeker was to provide assistance in finding the way out of the cave. I believe that Jeremy was acting as a truth-seeker. He was trying to expose a false reality that had been presented to us.

Jeremy's work as a hacktivist was revelatory. He didn't break into corporate systems to embarrass their corporate owners. And he didn't do it to merely expose secrets (although he did expose plenty). Jeremy Hammond is important because his exploratory hacking helped expose the scope and nature of the private intelligence industry. Along the way he exposed an organized and well-funded system of

C 7

deception targeting American citizens and other populations worldwide. He showed that the deception was systemic, sometimes illegal, and often exceptionally disturbing.

Few people realize that in addition to the familiar U.S. Government intelligence agencies (the F.B.I., N.S.A., C.I.A., and military intelligence operations) there are also a number of private intelligence corporations —, a sector of the intelligence community that is not well known but which is massive in scope. Tim Shorrok, author of "Spies for Hire: The Secret World of Intelligence Outsourcing" cites government estimates that by 2006, $42 billion of the $60 billion spent annually by the United States Government on foreign and domestic intelligence was going to private intelligence firms — -- meaning that 70 percent% of the money spent on intelligence was being outsourced. This also means that most of the intelligence activities take place outside of the (imperfect) oversight system that we have established for our federal enforcement agencies -- the CIA, NSA, FBI, etc. And of course the American U.S. Government is far from the only customer for these services. They also provide intelligence services for multinational corporations and lobbying groups.

Strategic Forcasting Inc., or Stratfor, was one of those private intelligence companies. It was originally hacked on Dec. 5, 2011 and a number of credit card numbers were released on the Internet. Jeremy did not participate in this first hack but he acquired the exploit and hacked Stratfor and perpetrated his own hack, which was posted to the Internet on Dec. 24, 2001.

Why did he target Stratfor if it had already been hacked? The initial hack (in which he did not participate) was done to harm and embarrass Stratfor. Jeremy's hack was something else: It was an attempt to expose the deception matrix that Stratfor was using against the American people.

Jeremy's hack of Stratfor provided a remarkable insight into how the private security and intelligence companies view themselves vis a vis government security agencies like the C.I.A.

For example, Stratfor was involved in monitoring activists that were seeking reparations for victims of a chemical plant disaster in Bhopal India, including a group called Bophal Medical Appeal. But the targets also included The Yes Men, a satirical group that had humiliated Dow Chemical with a fake news conference announcing reparations for the victims. Stratfor regularly copied several Dow officers on the minutia of activities by the two members of the Yes Men. For example one e-mail reported "Yes Man Mike Bonanno (Igor Vamos) was to give a lecture on 3/24 at Temple University in Philadelphia. The event was sponsored by

"ProduceExhibitions, The Temple Film Department, and The Tyler Art History Department." As a University educator, I found it particularly disturbing that Stratfor was passing along names of student organizations and the officers of those student organizations.



Disturbingly, Jeremy's work exposed that Stratfor even developed an illegal strategy for trading equities based on the inside information it was being supplied by its



On May 28 of this year Jeremy Hammond plead guilty to the Stratfor hack, noting that even if he could successfully defend himself against the charges he was facing, the Department of Justice promised him that he would face the same charges in eight different districts and he would be shipped to all of them in turn. He would become a defendant for life. He had no choice but to plea to a deal in which he may be sentenced to ten years in prison. But even as he made the plea he issued a statement, saying "I did this because I believe people have a right to know what governments and corporations are doing behind closed doors. I did what I believe is right."

Many of Jeremy Hammond's supporters agree that what he did was right, and when one considers the scope of what his hacks exposed it is easy to understand why. In their view, the private intelligence industry is effectively engaged in PSYOPS against American public.

In the two and a half millennia since Plato, many philosophers have employed the basic form of Plato's allegory, and the allegory has even found its way into popular

C 9

culture. For example, in film *The Matrix*, the young computer hacker Neo learns that what he is experiencing is mere illusory representation – the experiences are being generated by a great computer simulation. Discovering this is no easy task, however. Initially, Neo just has the vague sense that something is wrong. When he meets the hacker Morpheus, he is unsure how to articulate his sense of discomfit. As Morpheus explains to Neo, the source of the discomfit his sensing the existence of The Matrix – "the world that has been pulled over your eyes, to blind you from the truth."

This is the key to understanding why Jeremy Hammond is held in such high regard by his supporters. His actions pulled open the curtain of deception and allowed us to see behind it; he exposed the world that has been pulled over our eyes, to blind us from the truth.

Sincerely,

Peter J. Ludlow
Professor
Department of Philosophy
Northwestern University
Evanston, IL 60208

C 10

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 14, 2013

Dear Judge Preska,

We are a group of concerned editors and journalists from around the globe. Together we represent newspapers, TV networks, and magazines with a combined audience of 500 million. In 2011 our news outlets published articles using documents allegedly obtained by Mr. Jeremy Hammond. We are aware that Mr Hammond has pled guilty to a violation of the Computer Fraud and Abuse Act in relation to information from the company Strategic Forecasting Inc, or "Stratfor". The information allegedly disclosed has helped to keep the public informed about serious wrongdoings of corporations and corrupt governmental officers in more than 15 countries. In literally hundreds of articles based on these documents, we demonstrated corrupt and unethical behavior by a wide range of entities including Stratfor and its clients. These publications have led to important public interest outcomes. We implore you to consider a less severe penalty for Mr. Hammond.

Mr. Hammond did not seek to economically benefit himself by selling the information to Stratfor's competitors or other interested actors. His co-defendants in Ireland will not be prosecuted and in the United Kingdom those who are already convicted will not spend more than 16 months in prison. We are asking you for leniency. A sentence that is not lenient runs the risk failing to differentiate between media sources whose activities bring about important public good and those engaged in professional criminality. This would have the serious consequence of encouraging the latter form of conduct over the former.

Mr Hammond is young, intelligent, politically engaged, and someone whose alleged conduct is directly linked to the constitutionally protected rights of the press. We believe he has a strong case for leniency.

We have an ongoing interest in this case since it may affect one of our journalistic sources and the ability of the press to function effectively. We remain immensely grateful for Mr. Hammond's alleged courageous assistance to our publications.


Yours sincerely,


Zaffar Abbas, Dawn Media Group, Editor, Haroon House, Karachi, Pakistan

Julian Assange, WikiLeaks, Editor-in-Chief, University of Melbourne, P.O. Box 4080, Victoria 3052, Australia

Carlos Enrique Bayo, Publico, Director, Gran Vía, 30 (5º), 28013, Madrid, Spain

Abou Hattab Fathy, Al-masry Al-youm Newspaper, General manager, 49 Almobtdayan St, CIB Building, 2511, Cairo, Egypt

Aissa García, Telesur in México, Director, Rodriguez Saro 130, Delegación Benito Juárez, CP 03100, México, DF, Mexico

Jamal Ghosn, Al Akhbar English, Managing Editor, Concorde Building, 6th Floor, Verdun Street, Beirut, Lebanon

John Goetz, NDR, Editor, Investigations, ARD-Hauptstadtstudio, Wilhelmstr. 67a, 10117 Berlin, Germany

Nicky Hager, The Sunday Star Times, Journalist and Author, Wellington, New Zealand

Vitaliy Leybin, The Russian Reporter magazine, Editor-in-Chief, Bumazhniy proezd 14, floor 8, Moscow, Russia

Jean-Marc Manach, Lemonde.fr, Journalist and Writer, 80, boulevard Auguste Blanqui, 75707 Paris Cedex 13, France

Stefania Maurizi, L'Espresso, Journalist, via C.Colombo, n.90, 00147, Rome, Italy

Pedro Miguel, La Jornada, International Affairs, Av. Cuauhtémoc 1236, Colonia Sta. Cruz Atoyac, CP 03310, DF, Mexico

Martín Rodríguez Pellecer, Plaza Publica, Director, Universidad Rafael Landívar, Ciudad de Guatemala, Guatemala

Atanas Tchobanov, Bivol, Editor, Burgas 8000, 4, Baba Ganka Sqr., fl. 4, Bulgaria

Ernesto Tiffenberg, Pagina 12, Executive Editor, Solís 1525., Código Postal C1134ADG, Buenos Aires, Argentina

Natalia Viana, Journalist and Author, Rua Harmoniam 1010-102, Vila Madalena, Sao Paulo, Brazil

C 11

**Thought**Works®

October 21, 2013

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska:

My name is Neville Roy Singham and I am the Founder and Chairman of ThoughtWorks, Inc., a global IT consultancy. I founded ThoughtWorks over 20 years ago with the aim of attracting and employing the best knowledge workers in the world and building a community based on attitude, aptitude and integrity. We have grown from that small group in Chicago to a company of over 2500 passionate people spread across 29 offices in 12 countries. Our mission is to better humanity through software and to help drive the creation of a socially and economically just world. It is with our mission in mind that I write this letter in support of Jeremy Hammond and ask this Court for leniency and compassion in his sentencing.

Jeremy Hammond is not someone that I know personally, however, in part because our company originated in Chicago, some of our employees know him personally and have shared stories about a gifted young man with a deep sense of ethics who has bravely stood up for the causes he believes in. By all accounts, Jeremy has been a committed and selfless political activist, taking on causes from protesting Nazis to standing up for gay rights. The values at the heart of these causes are those shared by ThoughtWorks. He is *not* a violent offender and he did not seek out or take advantage of information for his own personal or financial gain. Rather, Jeremy sought information in order to expose what he believed to be illegal and immoral activities perpetrated by private companies in collaboration with our government; his sole goal was the betterment of our society.

I have another personal reason for writing to you, and that is to express my deep concern for the Computer Fraud and Abuse Act. Aaron Swartz was a close personal friend and valued employee of ThoughtWorks. Aaron espoused the qualities we pride ourselves on at our company - he was a brilliant young man deeply engaged with the issues of his time who lived his life with integrity. As you may know, Aaron faced federal charges for violations of the CFAA for an act of civil disobedience apparently intended to promote universal access to academic journals – the broad and open sharing of information. I watched as the threat of prosecution under the CFAA overwhelmed this

C 12

**Thought**Works®

young man. Tragically, Aaron was so distraught over the possibility of spending years in prison and the potential loss of his rights of citizenship that he took his own life a few months prior to trial. Those of us close to him, and many others alongside us, have worked since to ask that our brightest, most socially conscious young people, who break laws as acts of conscience, be treated with compassion. As your Honor is well positioned to understand, the CFAA is a vaguely written law that gives prosecutors broad discretion, has been selectively enforced, and provides for shockingly harsh penalties. We are pained to watch this outdated piece of legislation profoundly alter another young man's life.

Jeremy Hammond performed a politically motivated, nonviolent act that he felt was necessary in order to hold wrongdoers accountable and as a result he has pleaded guilty to a violation of the Computer Fraud and Abuse Act, for which he is facing up to 10 years in prison. A maximum sentence of 10 years is on par with sentences provided to violent offenders and thieves who steal information purely for personal profit. We believe that Jeremy is a young man who is trying to make the world a better place. He deserves this Court's compassion and I humbly request that this Court sentence him to time served, a just punishment for his violation of the CFAA.

Yours truly,

*Neville Roy Singham*

Neville Roy Singham
Chairman
ThoughtWorks, Inc.

C 13

Richard M. Stallman



22 October 2013

Dear Judge Preska,

I've been proud to call myself a hacker since 1971. That's when I was hired by the MIT Artificial Intelligence Lab to join the team that developed the lab's operating systems – for which the unofficial job title was "system hacker". My subsequent hacking career has included developing the GNU operating system, which is often erroneously called "Linux", and the legal hack of "copyleft" which uses copyright law to ensure that all users of a program are free to redistribute it and change it. I've received numerous awards and doctorates for my hacking, and have been invited twice to publish articles in law reviews.

Hacking means playful cleverness; a hacker is one who practices or enjoys playful cleverness. (See http://stallman.org/articles/on-hacking.html.) It does not particularly have to do with breaking security. Indeed, no one ever broke security on the AI lab's system, because we decided not to implement any.

That decision, made by the original team members who became my mentors, was not taken lightly: it was the result of careful political and philosophical thought. Instead of keeping most users (those without "privileges" – which already sounds like a prison) shackled so that they could not hurt each other, we thought the lab members and guest users could learn to get along as a community, choosing not to hurt each other. And they did!

This example is not unusual for hackers. From the beginning, hackers' taste for playful cleverness has often gone along with a sense of social responsibility, concern for others' well-being. Jeremy Hammond is a fine example of a socially responsible hacker. He found a clever way to expose the many nefarious deeds that Stratfor was planning and proposing.

People should not be allowed to enter others' computers without permission; but when punishing someone for virtual trespassing, we ought to consider his motive. Those who trespass as part of a nonviolent protest, either physically or virtually, should not receive severe punishments. Those who act neither for gain nor for malice should not receive severe punishments. Imagine where our country would be if the civil rights and antiwar sit-ins had been punished by years in prison! If we do not want the US to be like Putin's Russia, imposing long sentences on protesters, we must steer clear of doing so. That applies to virtual protests as well as physical ones.

I therefore respectfully suggest that Hammond be sentenced to community service. To make use of his skills and abilities, this service could consist of helping nonprofit organizations protect their personal data.

Sincerely,

Richard Stallman
Lead developer of the GNU system (gnu.org)
President, Free Software Foundation (fsf.org)
MacArthur Fellow
Internet hall-of-famer (internethalloffame.org)

C 14

 centerforconstitutionalrights

October 18, 2013

Honorable Loretta A. Preska
Chief Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      RE: Sentencing of Jeremy Hammond

Dear Judge Preska:

I am the Legal Director of the Center for Constitutional Rights, an organization that has long defended the rights of activists, whistleblowers and others engaged in peaceful civil disobedience because of our conviction that such activity is often necessary in a democracy to highlight injustice and promote positive social change. I write to express my concern about the prosecution of Jeremy Hammond and the disproportionate sentence the government will likely request in his case and to urge you to consider the lightest sentence available, of time served.

I do not dispute the fact that Jeremy Hammond violated the law. However, the law he violated, the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1830, in this case and others, has been used to criminalize conduct beyond its originally contemplated purpose.  The CFAA was drafted in order to address and deter self-interested or malicious hacking or theft of computer services and systems, however, it has become increasingly used – and in our view, abused – by federal prosecutors in order to target socially-conscious activists who choose to leak sensitive information to media organizations in an effort to highlight corporate or government wrongdoing.

There can be little doubt that Mr. Hammond acted for political purposes, not for financial gain or with venal intent. He leaked information to the media in the interest of greater transparency for the American public on the issue of unlawful surveillance by corporations.  For this act of conscience, he has already endured nineteen months of pre-trial detention.

In the wake of the tragic death of Aaron Swartz, another young transparency advocate and gifted computer programmer prosecuted under the CFAA, Reps. Lofgren and Sensenbrenner introduced a bipartisan bill earlier this year to address some of the flaws in this law, including vague definitions that lend themselves to dangerous misinterpretations and over-prosecution, and the heavy-handed sentencing scheme that is being applied to Hammond's case. Their concerns echo those of a larger legal and political community concerned with how socially-minded activists like Hammond and Swartz are subject to heavy-handed and intimidating federal prosecutions.

We recognize it is beyond the court's power to limit such prosecutions the Justice Department seeks to bring under the statute, but it is within the Court's discretion to limit the severe punishment the government seeks to employ accompanying its prosecutions to silence socially-conscious activists like Mr. Hammond.

Punishment for Hammond's illegal accessing of Stratfor's sensitive information should be proportionate with his moral impetus to expose Stratfor's wrongdoing. Three of Hammond's co-defendants were already sentenced for the same conduct in the U.K, and their jail sentences are shorter than what Hammond has already served in pre-trial detention.

Given the nature and context of his violation, Mr. Hammond has suffered enough.   We respectfully urge you to impose a sentence of time served.

Thank you for your consideration.

Respectfully submitted,

Baher Azmy

C 16

# center for constitutional rights

666 broadway
212.614.6464

October 24, 2013

The Honorable Loretta A. Preska, Chief Judge
United States Courthouse
Southern District of New York
Courtroom 12A
500 Pearl Street
New York, NY 10007

Re: Sentencing of Jeremy Hammond

Dear Judge Preska:

I am the President Emeritus of the Center for Constitutional Rights (CCR). Along with CCR I represent WikiLeaks and Julian Assange. I strongly endorse the reasoning and the conclusions in the letter from the CCR recommending that Mr. Hammond be given no more than time served. I write to add some additional reasons.

WikiLeaks as well as numerous other publishers and journalists have published important stories based on documents that were obtained from Stratfor (Strategic Forecasting Inc.) by Mr. Hammond. Those documents for the first time gave the American people and others in the world a picture of the malevolent part that private intelligence corporations play in surveillance of legally and constitutionally protected activities and the activists involved. This is a role that they often appear to do hand in glove with our own or other governments. In my legal career I have often attempted to rein in government spying and surveillance. As an attorney with CCR I have sued the FBI, CIA, NSA and other government entities numerous times. The Stratfor documents have now given us the understanding that the private intelligence companies may be a bigger problem for civil liberties than or own government and it is those companies we ought to be suing as well.

The documents showed that Stratfor employed a network of paid informants including government officials and journalists who carried out this work. They also showed us the corruption of officials, serious wrongdoing by corporations and efforts to spy on if not suppress dissent. Despite the revelations in the Stratfor documents I am aware of no efforts by my own government or governments anywhere in the world to investigate much less prosecute those who engaged in this illegal conduct. I raise this to point out the injustice and hypocrisy in prosecuting Mr. Hammond, a person committed to revealing this wrongdoing, while doing nothing to get at those who may have committed the very crimes he brought to light. It may be that those who engage in civil disobedience and whistleblowing against injustices often face the wrath of the state, but that does not mean it is right and just to punish them and certainly not to do so severely. Oftentimes, as years go by they become our society's heroes.

1


17

In years of litigating cases involving surveillance, torture, renditions and war crimes against our government (as well as some private corporations), we are often met with claims by the government that the lawsuits cannot continue because the matters concern state secrets. Cases are routinely dismissed for this reason and the truth is neither revealed nor is the legality of the conduct litigated. This trend of dismissal of cases on state secrets grounds has been increasing and it is fair to say that the illegal acts of our government and the private security and intelligence companies that work with it are increasingly hidden from the American public and world. In fact, litigation against the government is no longer a path to the truth or justice. It is for this reason that truth tellers like Mr. Hammond have become more and more important in insuring that people know what their government and private intelligence companies are doing in their names. It is the case that Mr. Hammond has pleaded guilty to violation the law, but the greater crime is keeping from us knowledge, particularly of criminality, that ought to be public and prosecuted. Truth tellers are always necessary in a society. Sadly, now, they are more necessary than ever.

Michael Ratner

C 18



UMass | Dartmouth

285 Old Westport Road, N. Dartmouth, MA  02747    508-999-8000

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 14, 2013

Dear Judge Preska:
    I write to you in the hope that you will take a compassionate approach to the sentencing of Jeremy Hammond.  I am an Associate Professor of Philosophy at UMASS Dartmouth.  For a decade I have been teaching courses on Ethics, Technology and the Internet, and courses in my area of scholarly specialization, Ancient Greek Philosophy.  I am aware that Jeremy has pled guilty to the charges against him—violation of the Computer Fraud and Abuse Act.  I am also aware that he has pled guilty as an act of Civil Disobedience.  You are in the position of reconciling Jeremy's violation of the law with the full context of the case, which includes this intention.  Leniency in sentencing is, in my view, an appropriate reconciliation.  While I believe that the Computer Fraud and Abuse Act is a problematic piece of legislation, the matter before you is not overturning this law but overseeing its implementation in a specific instance.  A young person's life and the direction it will take in the future is on the line.
    Jeremy's political activism, often called "hacktivism," is a new context in which Civil Disobedience has emerged with respect to technology in the 21st century.  Breaking into computer systems may seem an unlikely method of activism, however the Computer Fraud and Abuse Act is unhelpful in distinguishing between those breaking the law for illegal profit and those breaking the law without any profit as their aim—those whose goal is to reveal highly problematic, secret conspiratorial activities.  Jeremy's case is one of the latter types of cases.  Personal, illegal profit was neither his motive nor goal.  Revealing the truth about a private surveillance and intelligence firm, Stratfor (Strategic Forecasting), was.  Jeremy has admitted guilt to what amounts to "breaking and entering" in order to release such information to the public.  People may disagree about whether or not the public ought to know about the workings of private intelligence firms.  Jeremy clearly believes that *the public ought to know*—herein lies his *moral motivation* and the core of his Civil Disobedience.  I wish to assure you that this is an authentic instance of Civil Disobedience.  I believe you would be wholly justified in determining a sentence that does not level Jeremy with genuine criminals.
    Jeremy did not act alone, and I hope that you consider the international context in which his co-defendants have been treated in their respective countries.  His Irish co-defendants will not be prosecuted at all and those already convicted in

C 19

the United Kingdom will not spend more than 16 months in prison. These other countries take computer fraud no less seriously than we do in the United States. The Computer Fraud and Abuse Act should not, I believe, force harsher penalties upon our citizens, particularly Jeremy Hammond. He has stood by his moral convictions and now faces the consequences of breaking the law. My hope is that you find it perfectly within reason to sentence Jeremy with leniency. There is public support for your making such a sentencing decision—you, too, would not stand alone just as Jeremy does not stand alone.

Thank you for your time and consideration.

Sincerely,

Maureen Eckert
Associate Professor, Philosophy Department
UMASS Dartmouth

C 20

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 14, 2013

Dear Judge Preska:

I am an individual and radio operator who was a subscriber & customer of Stratfor Incorporated at the time of their computer break-in. In this case, I am aware that Jeremy Hammond has pled guilty to a violation of the Computer Fraud and Abuse Act regarding the computer break-in of Stratfor Incorporated. I am writing this letter to ask that Jeremy Hammond be treated with compassion and leniency. The reasons I am asking for compassion are as follows; His break-in of the Stratfor computers was clearly a political protest that ultimately showed he had no intent to profit from data uncovered by his actions. I am relieved that this computer break-in was quickly made public because it would of been devastating to Stratfor and myself if the attack was done by a foreign entity or a criminal organization who would of kept the computer break-in secret, possibly using the data for nefarious purposes. In my opinion, no long term harm or damage has resulted to Stratfor Inc. or myself. Lastly, the computer break-in was a catalyst for Stratfor, its customers, including myself to utilize better computer security practices.

I understand Jeremy has been incarcerated since his arrest. His co-defendants in Ireland and the United Kingdom have been sentenced to terms of 16 months in prison or less for their participation in this criminal act. His imprisonment is a cloud that will shadow Stratfor and its customers until he is finally released. It is important that Jeremy Hammond be shown compassion and leniency, thus allowing all concerned parties to move forward, including Jeremy regarding his own rehabilitation.

I thank you for your time and consideration in this matter.

Sincerely,

Anthony C. Arthur

Honorable Loretta A. Preska, Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 13, 2013

Dear Judge Preska,

We are the Yes Men, a team of filmmaker-activists who use satire to raise awareness of important social issues. The case of Mr. Jeremy Hammond is highly compelling to us because he is a man whose righteous intentions are the same as those which fuel our own efforts to improve our communities and the world. We're aware that Mr. Hammond pled guilty to a violation of the Computer Fraud and Abuse Act, and we are writing Your Honor to ask that he should be treated with compassion, in light of his intensely humanistic, nonviolent, open-hearted intentions.

It is distressing to us that he faces such repercussions for taking actions that were meant only to bring positive change. His co-defendants in the UK will either not be prosecuted or will serve minimal sentences, which seems just. The sentences associated with the CFAA seem grossly disproportionate, and would seem to give corporations greater protections than people -- people who may be subjected to surveillance by private corporations such as Stratfor, as we were.

We implore Your Honor to treat Mr. Hammond with compassion, in consideration of his purely moral intentions, his strongly evident compassion and sense of social justice, and the obviously significant fact that he had no financial motivations whatsoever.

Sincerely,

Andy Bichlbaum and Mike Bonanno
The Yes Men

C 22

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

15 October 2013

Honorable Judge Preska:

My name is Azzurra Crispino, and I am an Associate Professor of Philosophy at a major Central Texas Community College.  I primarily teach Ethics.  I was involved in Occupy Austin, and have been corresponding with Mr. Jeremy Hammond during his incarceration.  I understand that Mr. Hammond has pled guilty of the Computer Fraud and Abuse Act.  I am writing today to implore you to treat Jeremy with leniency and compassion in his sentencing.

In the year or so that I have been corresponding with Mr. Hammond, I have found him to be a compassionate, self-possessed young man who is intent on making our society better through revealing corruption.  His methods may have been inadvisable, but his motivations were to make our society more just.  He did not profit from these actions, nor did he attempt to use the information revealed in the hack for personal or monetary gain.  I believe these factors make him an ideal candidate for leniency.

Mr. Hammond's crime impacted me personally, in the sense that it gave me direct proof that I, as well as other peaceful protestors, were being infiltrated.  One direct result of the crime Mr. Hammond committed was to reveal that Occupy Austin had an undercover Department of Public Safety agent who was also giving information to Stratfor, a private information gathering company.  In the emails that were released by the hack, it was revealed that this DPS agent had been gathering information on a Deep Green Resistance group within Occupy Austin.  I find this remarkable, because the self-identified Deep Green Resistance members and their desire to start a commune was something that only occurred for a few days in the beginning of the occupation of City Hall.  Many members of Occupy Austin were not even aware that these persons were around because their influence was so brief.  To me, that implies that the DPS undercover work was extensive, as they were aware of elements of the movement so minute that active members of the organization themselves may have missed.

As much as I understand that Mr. Hammond was wrong to break the law and compromise those servers, I also believe that he provided an invaluable service to the Occupy Austin activist community, as well as others, by giving us concrete proof we were being subjected to surveillance.  This is especially important in Austin, because there were several activists who were charged with felonies for their part in a peaceful protest at the Houston Port that occurred on December 7th 2012. The reason they were charged with felonies is because of the use of "dragon sleeves" which were viewed as a criminal device, and were provided to Occupy Austin activists by an undercover Austin Police

Department Narcotics Officer named Shannon Dowell. Although this undercover surveillance was uncovered during the legal defense of the activists and not by Mr. Hammond's actions, the information revealed in the so-called Stratfor hack made it easier for us to accept the extent to which law enforcement was actively involved in undermining our peaceful protest movement.

In "Letter from Birmingham Jail", Dr. Martin Luther King, Jr. writes:
"[o]ne who breaks an unjust law must do so openly, lovingly, and with a willingness to accept the penalty. I submit that an individual who breaks a law that conscience tells him is unjust, and who willingly accepts the penalty of imprisonment in order to arouse the conscience of the community over its injustice, is in reality expressing the highest respect for law".  Mr. Hammond's actions reflect Dr. King's sentiments in this passage. His purpose in compromising those servers was to highlight the extent to which immoral and possibly illegal surveillance and entrapment were occurring throughout many Occupy movements around the country. I believe Mr. Hammond broke the law in the service of a higher principle. He is ready to accept his punishment lovingly and willingly. I am begging you to please ease his burden, especially in light of the light on corruption shed by his actions.

I urge you to be lenient and compassionate when sentencing Jeremy Hammond.

Thank you for taking the time to read this letter,

Azzurra Crispino
Associate Professor, Department of Philosophy

C 24

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 11, 2013

Dear Judge Preska,

I do human rights work on behalf of the Baloch people in Pakistan and learned of Jeremy Hammond's case by way of the hyperactive twitter account of the hacker named Sabu.

While a handful of journalists have covered the extrajudicial abductions and killings in Balochistan, human rights activists labored under the impression that world and US officials were largely unaware of the situation in Balochistan—until the Wikileaks revelations showed otherwise. And with the Stratfor leaks, we were offered a glimpse of just how widespread the knowledge is of the strife in Balochistan.

I do not know Jeremy personally, but many activists were following the hactivists on twitter because they appeared to be politically motivated by a desire to change the world for the better. And in our case, because the UN, world leaders and even several high-profile human rights organizations failed to publicly address the dire situation in Balochistan, urge any investigations or attempt to influence the behavior of the Pakistan military and its agencies, we paid attention to their activities on the off chance that further hactivist revelations might reveal what had happened to the disappeared and those responsible for the disappearances of Baloch activists. At the time I knew of a case in which a Pakistani national living in Pakistan was warned by diplomats of a threat against his life, so it seemed to me that there is no lack of information regarding what the reality on the ground is—it just had to be uncovered.

Indeed, prior to Sabu so famously disappearing with the literary flourish, "The greatest trick the devil ever pulled was convincing the world he did not exist and like that...he is gone," a mother whose son had been abducted in Balochistan had penned an open letter to the website crisisbalochistan.com stating, "Maybe these hackers will uncover information that will reveal to us if our children are alive or dead."

It is against this background that I attended two of Jeremy's hearings in New York. I was chagrined by the possibility that a bright young man whose motivations were seemingly altruistic could face so much time in prison for his actions. And because that particular hack revealed to Baloch activists that their pleas and case had, in fact, reached the attention of many people in a position to actually address the issues, it had been beneficial to that particular human rights cause.

I am aware that Jeremy pled guilty to a violation of the Computer Fraud and Abuse Act and I am also aware that Jeremy's co-defendants in Ireland and the United Kingdom have either been released or are serving relatively short sentences. In sentencing Jeremy Hammond, I respectfully request that you grant him leniency. I understand his acts were born of compassion and politically motivated—not financial—and were undertaken as acts of civil disobedience. It is my sincere hope that Jeremy will be released with a sentence of time served.

Respectfully,

Wendy Johnson

C 25

**ALEXA D. O'BRIEN**

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**October 15, 2013**

Dear Judge Preska:

I am an American journalist.  My work has been published in The Guardian (UK), The Daily Beast, and Salon.com.  My recent work covering the Chelsea (formerly Bradley) Manning's court martial was shortlisted for the 2013 Martha Gellhorn Prize for Journalism in the UK.

Please consider Jeremy Hammond's act in light of its true political nature as civil disobedience and show leniency towards him when making your sentencing determination.

The disproportionate sentences associated with the CFAA and the protection the CFAA affords corporations is greater than those it affords to individuals, who may be subjected to surveillance by private corporations like Stratfor.  Hammond's co-defendants in Ireland will not be prosecuted and in the UK those who are already convicted will not spend more than 16 months in prison.

Stratfor emails revealed that private security contractors with ties to the US Government were ████████████████████████████████████████████████████████. The emails were part of a number of submissions I made in Hedges versus Obama, a lawsuit filed in the Southern District of New York against the indefinite detention clause of the 2012 National Defense Authorization Act.

Judge Katherine Forrest ruled that my submissions and testimony illustrated that I had a credible fear concerning Section 1021(b)(2) of the 2012 NDAA, which allows for the indefinite detention without charges or trial of anyone who are deemed to be terrorists or 'terrorist sympathizers'.

Forrest permanently enjoined Section 1021(b)(2) in September 2012.  The 2nd Circuit recently overturned her decision.  We are making application to the Supreme Court.

Sincerely,

*Alexa O'Brien*

C 26

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 10, 2013

Dear Judge Preska,

I am an American Journalist living and working in Bhopal, India. I am writing to you today to humbly ask for you to consider being lenient when sentencing Jeremy Hammond. In Bhopal, I have been covering The Bhopal Disaster. You may have heard about this tragedy. A deadly gas leak in an American-owned factory left 2,800 people immediately in 1984, and thousands more would die in the years to come. I can tell you some of the stories I've heard: survivors of the disaster who lost their husband and all their children, stories of people literally falling over corpses as they run for their lives the night that the gas leaked from the factory. Or the long 29 years it's been since as they've tried to seek justice and compensation for the disaster that has left many survivors and their children and their grandchildren with health problems, including birth defects and cancer.

At first glance, this may sound off-topic but it is directly related to the case of Jeremy Hammond. Jeremy Hammond's leaks uncovered that Dow Chemical has been hiring people to spy on activists working around The Bhopal Disaster. These activists want nothing but justice for the people who have died and for those who continue to be affected by the Disaster that happened almost thirty years ago. Dow Chemical spied on them to try to subvert their efforts and continues to try and subvert their efforts because they do not want to compensate for the disaster.

I am writing to you for myself, for the lawyers, activists, researchers, doctors, boys and girls, women and men, in Bhopal who deserve to know the truth, who appreciate what Jeremy Hammond revealed and who are only asking for justice and to survive.

Jeremy Hammond did not leak the documents for any monetary or individual gain. He leaked the documents as a political act of civil disobedience. His co-defendants are facing significantly less prison time than Jeremy, or no prison time at all. In Ireland, they won't even be prosecuted. There is no doubt that Jeremy Hammond broke the law. For this, he has pled guilty. But there is doubt as to whether his crime deserves 10 years in prison.

Judge Preska, I am asking humbly that you show compassion and leniency when sentencing Jeremy Hammond on November 15. For his act of civil disobedience, he has spent enough time behind bars.

C 27

Sincerely,

Raven Rakia
Freelance Journalist, Filmmaker
University of Pennsylvania
B.A. in Economics, Urban Studies



October 13, 2013

To: The Law Office of Susan G. Kellman
    25 Eight Avenue
    Brooklyn, New York 11217

From: Chris Hedges



Re: Sentencing of Jeremy Hammond

I would like to add my voice to the voices of many who hope the court would not impose
the maximum penalty of ten years for Jeremy Hammond. The condition of his
incarceration, as well as a prison term of this magnitude, is not justifiable given the
offense he committed.

I worked for fifteen years as a foreign correspondent for The New York Times. I was
part of the team of investigative reporters who won a Pulitzer Prize in 2002 for our
coverage of global terrorism. I was, before being on the investigative team, the Balkan
Bureau Chief and Middle East Bureau Chief for the paper. I have published eleven
books, three of which were New Times best sellers. I have taught at Columbia
University, New York University, Princeton University and The University of Toronto.

I was in charge of covering Al Qaeda in Europe and the Middle East, based at the time in
Paris, for the New York Times after the attack of 9/11. In my capacity as an investigative
journalist into the world of global terrorism I frequently was in possession of very
sensitive classified information leaked to me officials within a variety of intelligence
agencies I worked with, including the counter-terrorism units of the French and Spanish
governments. I published numerous stories that made use of this information. Not all of
my stories pleased the U.S. government. The information Mr. Hammond purportedly
leaked was of very minor significance given the information I handled routinely.
Furthermore, given that Mr. Hammond did not seek to profit personally from this
information and given that he is a first time offender it seems to me the court owes him
the benefit of the doubt in terms of sentencing.

I hope you will offer him the leniency I and many other journalists feel he deserves.

Yours

Chris Hedges

1

C 29

# national lawyers guild

*"An organization of lawyers, law students, legal workers, and jailhouse lawyers... in the service of the people, to the end that human rights shall be regarded as more sacred than property interests."*   Preamble to the NLG Constitution

October 15, 2013

The Honorable Loretta A. Preska, Chief Judge
United States Courthouse
Southern District of New York
Courtroom 12A
500 Pearl Street
New York, NY 10007

Dear Judge Preska,

I write on behalf of the National Lawyers Guild (NLG) to ask you to show judicial leniency in his upcoming sentencing. I've met with Mr. Hammond on several occasions over the past year, have established a close relationship with him, and am quite familiar with cases involving the Computer Fraud and Abuse Act (CFAA). I believe him to be an honorable and idealistic young man who has a lot to contribute to society.

Mr. Hammond reminds me of other altruistic individuals who respond to social inequities and elect to engage in acts of civil disobedience as a means of educating the public about pressing issues of the day. In my capacity as executive director of the NLG I come into contact with hundreds of similarly principled Americans who are frustrated with the many problems facing modern society, and who are willing to engage in acts designed to draw attention to social and political inequities.

I believe that Mr. Hammond has had chance to reflect on his actions and as a result has matured greatly during his period of incarceration. I do not believe that additional prison time would serve any societal benefit.

Thank you for exercising judicial discretion and for considering a lenient sentence of time served for Mr. Hammond.

Sincerely,

Heidi Boghosian
Executive Director

## 75 Years of Law for the People

132 Nassau Street, Room 922, New York, NY 10038   212-679-5100   Fax 212-679-2811   nlg.org   @nlgnews

C 30

Honorable Loretta A. Preska

Chief Judge

Southern District of New York

500 Pearl Street

New York, NY 10007


9 October 2013


Dear Judge Preska:


My name is Nigel Parry. I am a freelance journalist and web designer. I live and work in Saint Paul, Minnesota, for clients that have included the United Nations, the City of Pittsburgh, and a number of US nonprofit, media and educational institutions. I have seen my web and journalism work win two awards—the UK charity sector trade paper Charity Times' "Best Use Of The Web" award and the U.S. American-Arab Anti-Discrimination Committee's "Voices of Peace" award.


While I am not personally acquainted with Jeremy Hammond, I have followed his case closely as part of my ongoing research into Internet policy and freedom, and how computer crime is addressed in the criminal justice system. I was also a Stratfor subscriber at the time of its hacking—my email address and password were among those released on the Internet.


I am aware that Jeremy Hammond has pled guilty to a violation of the Computer Fraud and Abuse Act and I imagine one of the factors that he will be sentenced on will be the alleged damages caused to Stratfor. The criminal complaint for Jeremy Hammond █████████



C 31

Stratfor's losses cite the following four areas:

1.  costs and damages associated with responding to the hack
2.  costs and damages associated with conducting a damage assessment
3.  costs and damages associated with restoring or attempting to restore its computer systems and the data stored on them to their condition before the hack.
4.  lost revenue... including because of the inoperability of its website

While the losses described in points 1 and 2 would have been incurred as the result of any hack, I would like to draw your attention to the losses described in points 3 and 4. These losses, I strongly believe, were both foreseeable and preventable—and resulted from the Federal Bureau of Investigation's use of Stratfor's computer systems as bait to catch the hacker/s for the period of approximately three weeks, while the hacking continued.

In the FBI's own narrative of the hack, detailed in the original criminal complaint, a number of chat logs are cited that allow us to build a timeline of the hack. Just as Rome was not built in a day, neither was Stratfor hacked in a day. It took at least three weeks. Key dates in the timeline follow below.

(2)