**December 6th, 2011** - Stratfor hacked but Hammond still in the process of gaining access to systems, according to chat logs:



**December 13th-14th, 2011** - Email exfiltration described as ongoing in chat logs:



**December 19th, 2011** - Email exfiltration described as ongoing in chat logs:



We also learn from this section of the criminal complaint that Stratfor's e-mails totaled 200GB of data, with an additional 30GB of documents stored on an e-mail attachment or intranet server named "Clearspace".

The sizes are significant. 230GB is a sizable amount of data, enough to take days to transfer to another server. Hacking into a computer system may potentially take only a few minutes but moving this quantity of data takes time, even with decent bandwidth. One internet company, doyenz.com, estimates that on a 10Mbps connection (comparable to home broadband), 200GB would take 2.6 days to move from one server to another. Source: www.doyenz.com/rCloud/faq#GS7 All while the FBI watched.

(5)

**December 24th, 2011** - Wiping of servers and backup data:



The relevance of this timeline is highlighted in a blog post by Stratfor CEO George Friedman, found at www.stratfor.com/weekly/hack-stratfor. In this blog post, Mr. Friedman describes that he was notified by the FBI about the first instance of hacking in "early December". The blog post opens:

> In early December I received a call from Fred Burton, Stratfor's vice president of intelligence. He told me he had received information indicating our website had been hacked and our customer credit card and other information had been stolen. The following morning I met with an FBI special agent, who made clear that there was an ongoing investigation and asked for our cooperation. We, of course, agreed to cooperate.

Now that we know, with hindsight after the various Lulzsec arrests, that Hector Xavier Monsegur aka "Sabu" was "CW-l" in the original Hammond complaint, we can turn to the March 6th, 2012 FOX News report that broke the news that Monsegur was working with the FBI and detailing his work relationship, "EXCLUSIVE: Inside LulzSec, a mastermind turns on his minions":

> On Aug. 15, 2011, Monsegur pleaded guilty to more than ten charges relating to his hacking activity. In the following few weeks, he worked almost daily out of FBI offices, helping the feds identify and ultimately take down the other high-level members of LulzSec and Anonymous, sources said. In time, his

(6)

handlers allowed him to work from the home from which he previously wrought destruction, using a PC laptop provided by the FBI.

[....]

Sabu was online between 8 and 16 hours a day, often sleeping during the day and working throughout the night, watching YouTube videos as he worked for the FBI.  Monitoring software on his government-issued laptop allowed the feds to see what he did in real time. The FBI has had an agent watching his online activity 24 hours a day, officials said.

[....]

Sabu and his FBI handlers also disseminated false information to the public and hacker community—often through Twitter, sometimes through unsuspecting reporters who thought they'd landed an online interview with the notorious hacker. Their correspondence was sometimes directly with agents. More often it was with Sabu acting on strict guidance from the agents sitting with him, reading his every word.

Source: www.foxnews.com/tech/2012/03/06/exclusive-inside-lulzsec-mastermind-turns-on-his-minions/

This makes it absolutely clear that FBI agents had full control of Monsegur's online activities 24/7.

The facts of the matter are as follows.

The Federal Bureau of Investigation, which had full control of Monsegur, knew of the Stratfor hack as early as December 6th, 2011, and told Stratfor in "early December"—presumably almost immediately.

(7)

C 37

While credit card and subscriber information had indeed already been stolen from Stratfor's network by December 6th, the company's emails were not fully copied for another 1-2 weeks, and its servers and backups were not deleted for another 18 days. Both of these losses were foreseeable and easily preventable.

At any point during the downloading of the 230GB of emails during this 1-2 week period, the data being copied from the server could have been cut off and protected from theft by simply severing the connection between the e-mail server and the Internet—essentially as easy as pulling a plug or flicking a switch. This would have ensured that Stratfor's emails would not have been stolen, made public, or passed to the transparency publishing organization Wikileaks.

Along the same lines, it appears that—despite knowing about the ongoing hacking of their network for approximately 18 days—Stratfor saw fit not to make even one *offline backup* of their data (i.e. a backup that could not be deleted by anyone hacking their network connected to the Internet), which would have not prevented the theft of data on servers still connected to the Internet but would have left Stratfor with no data loss. This would have meant that Stratfor's website, which was down for at least one month, could have been restored in a day or two—had they had a backup.

One can only surmise, from its apparent lack of proactive risk mitigation, that Stratfor was told by the FBI to step back and take no action, in order to let the FBI "investigate" and catch the hacker. As the FBI watched an ongoing hack—in real time for three weeks, both from the vantage point of the hackers' chat rooms and from within Stratfor's own network—they would have known exactly what data was being extracted. This was being discussed in the chat rooms where the FBI's Monsegur was present, and the FBI experts with access to Stratfor's network would have been able to see the data flow in the Stratfor network.

For the Federal Bureau of Investigation to use a multi-million dollar American company as bait to catch a single person—ultimately sacrificing all of Stratfor's private data—seems a grossly disproportionate and incredibly risky approach to fighting computer crime that utterly fails to

(8)

C 38

protect the victim of the ongoing crime. It is the equivalent of the front door of your house being broken into, and the police asking you not to shut or fix it for three weeks, while they watch the criminals return, time and time again, to take more and more of your property. No one should be asked to do that.

Stratfor may indeed have been hacked by Jeremy Hammond but a large proportion of the costs, damages and losses it subsequently suffered were the inevitable result of the FBI's instructions to Stratfor to "cooperate" with their investigation. This particular brand of hands-off "cooperation" resulted in foreseeable damages at a cost that no American company should be asked to bear by an American law enforcement agency—again, all for the sake of catching a single person.

Jeremy Hammond should not be held accountable for Stratfor's costs, damages or losses that resulted from a law enforcement tactic that takes no responsibility for the damage it causes to the victims of crime. This sets a worrying precedent of giving the FBI *carte blanche* to leverage victims of crime into taking actions that ultimately harm them more than the original crime would have.

Jeremy Hammond has already spent more than a year and a half in jail, while Lulzsec members in the UK have already finished their sentences. I ask you to show leniency to Jeremy Hammond based on the obvious conclusion—from the evidence above—that many of Stratfor's losses could have been prevented if the FBI had not themselves sacrificed Stratfor.

Sincerely,

Nigel Parry



EMPORIA STATE
U N I V E R S I T Y

DEPARTMENT OF SOCIAL SCIENCES

Campus Box 4032
1200 Commercial Street
Plumb Hall 411

October 14, 2013

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska:

Greetings, Your Honor. I write to you on behalf of Jeremy Hammond. I am a professor of philosophy at
Emporia State University, in Emporia, Kansas. I regularly teach Introduction to Ethics and Political
Philosophy courses, and the issues involved in Jeremy Hammond's case go straight to the core ideas of
those classes. Furthermore, as a public servant, a member of the academy, and finally as a concerned and
politically active citizen, the issues his case brings to light have a direct impact on me. Though I am well
aware that Jeremy Hammond pled guilty to violating the Computer Fraud and Abuse Act, I believe his
sentencing should be made in view of his altruistic motives and the great public service he has carried out.

It is important to note that Jeremy Hammond was not involved in the first hack into Strategic Forecasting,
Inc. (Stratfor), which one could argue was a show of bravado; instead, his hack was motivated by a concern
for what the public does not know about the activities of its own government and the corporations which,
while serving ostensibly at our government's behest, troublingly fall outside of the government's tools for
proper oversight (however flawed those tools may currently be).

The information released by Mr. Hammond's actions reveals—as he suspected—numerous aspects of an
extremely troubling reality.

1.) Stratfor e-mails reveal that Stratfor is willing to leak classified files to other companies in order to assist
them in attacking their perceived enemies in the public (in this case, Stratfor told Coca-Cola that it could
provide them with a classified dossier on People for the Ethical Treatment of Animals). Many people are
currently threatened with years of jail time for leaking classified files while trying to inform the public,
whereas Stratfor is willing to distribute classified files—not, it should be noted, to the public or for the
public good, but instead in secret, to allow large corporations to quash public discussion of their behavior
by disabling journalists and activists.

2.) Thanks to Jeremy Hammond, the public has also learned that Stratfor was spying for other companies
such as Dow Chemical, Lockheed Martin, Northrop Grumman, and Raytheon to provide dossiers on their

**CHANGING LIVES SINCE 1863**

An Equal Opportunity Employer

perceived enemies. Stratfor assisted Dow Chemical, for example, in trying to avoid pressure from the public for it to give medical payments to victims of the chemical disaster in Bhopal, India (in which hundreds of thousands were permanently injured), by monitoring not only the activist group The Yes Men, but also faculty and student organizations at US campuses. This means that I myself, as an academic, am potentially in the crosshairs of these attempts to control what the public knows. The fact that bodies of higher education are considered "targets" for surveillance by Stratfor's corporate clients, also raises the important question, how much are US government agencies taking part in this targeting of educational institutions to stifle their discussions? It is thanks to Jeremy Hammond that these important issues can be discussed at all, and that we have at least the basis for pursuing a much-needed public inquiry into these associations.

3.) Furthermore, the e-mails reveal that Stratfor was preparing to engage in insider trading by means of the intelligence it had acquired through its espionage program. It is hard to believe that the public-—or for that matter the proper government authority—could be informed of these flagrant abuses unless Jeremy Hammond had made this information available to the public.

4.) Finally, Stratfor's attacks on activists—revealed by Jeremy Hammond—provide one more piece of evidence that private intelligence firms are carrying out a larger attack on investigative journalism and an informed public. Numerous private intelligence firms which work with national security agencies see the wider public as a legitimate target for PSYOPS (public disinformation campaigns). Other leaks have revealed, for instance, that the intelligence company Palantir specifically named the journalist Glenn Greenwald (a writer for the New York branch of the *Guardian* newspaper), as the target of a campaign to discredit him, in order to divert public attention from his reporting. These attacks on journalism and activism are especially concerning insofar as they cut at a core root of functioning democracy, namely, an informed public, a root specifically protected in the Bill of Rights. Again, insofar as I aspire to be an informed member of the public, I too am directly impacted by these public disinformation campaigns.

Not only was Jeremy Hammond acting on good intentions, but these revelations make it clear that his well-intentioned hunches were right: Stratfor was engaged in numerous egregious attacks on the public good, and, it appears, engaged in preparing numerous violations of the law. Given that Jeremy Hammond risked so much in order to provide information to further the public good, and furthermore exposed numerous apparently criminal activities on the part of Stratfor, I believe that his sentencing should take these crucial facts into account. He should therefore be sentenced to the minimum possible degree.

I thank you, Your Honor, for your time and attention.

Sincerely,

Charles Emmer



Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Thursday 17th October, 2013

Dear Judge Preska:

I am writing to ask you to exercise leniency in the case of Jeremy Hammond.

As a co-founder of Purpose, a leading consultancy at the intersection of technology and politics, I have spent the last four years working with committed advocates who use technology to help create the world we want. Purpose partners with individuals and organizations who are pioneering new forms of political participation and social engagement to create significant efforts to fight global inequality, eliminate nuclear weapons, change our food culture and secure LGBT rights. All of these movements are built on access to a free and open Internet, and any threat to that is a threat to progress.

In a post Wiki-Leaks world we are seeing Governments and powerful corporations desperately cracking down on freedom of the Internet. One of the clearest expressions of this has been America's over-zealous use of the Computer Fraud and Abuse Act (CFAA) used to prosecute our best and brightest technologists such as Aaron Swartz, who was a dear and personal friend, and sat on our Advisory Board. It is now being used against Jeremy Hammond and I fear we will repeat the same mistakes with this wonderful young man.

We cannot continue to abuse the CFAA to punish some of our leading lights who are committed to informing citizens about the activities of their government and corporations. Especially when their actions are purely political with no personal financial gain, as in Jeremy's case. Imagine if we imposed these types of sentences – normally reserved for some of the most egregious crimes – for acts civil disobedience for the anti-war protesters in the 1960s. Especially if a primary aim of those sentences was to protect corporate interests. What kind of America would we be living in now?

I hope you agree with me, and indeed our generation, the protection the CFAA affords to corporations is greater than those it affords to individuals, who may be subjected to surveillance by private corporations such as Stratfor. I hope you take these concerns into account when you make your decision.

C 42

I appreciate your time and consideration.

Best,

Alnoor Ladha
Founding Partner, Purpose; Co-founder, The Rules; Board Member, Greenpeace USA

ADDRESS:
Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

DATE: October 13th, 2013

GREETING: Dear Judge Preska:

My name is Matt Wilder. I work in the technology field as a Senior Site Reliability Engineer employed at Google. My career in the computing world has revolved around information security in many ways. In my current position I am responsible for security and reliability of the worlds largest cloud based distributed database system, which contains significant levels of sensitive customer and financial information. As you can imagine, keeping this information safe and secure is paramount. My involvement with computer security dates back over a decade to my early years defending small mom and pop internet startups credit card and other personal information from the various small time hackers and criminals who scour the internet for cheap and easy ways to exploit others for financial gain. I know all too well from personal experience how frustrating, difficult, and even damaging these actions can be to this country and the economic success of those attempting to operate in this sector.

I have been watching the case of Jeremy Hammond with considerable interest. One of the things that struck me the most was that he has been honest in owning up to his wrongdoings by pleading guilty to charges of violating the Computer Fraud Act. Another aspect that I found quite surprising is what he chose to do with the information he stole. Jeremy could have easily profited from this information in ways that may have ultimately led to prevention of his discovery and capture, but instead he chose to act in what he truly felt was a selfless and righteous manner to expose those whom he felt were exploiting our system of government to suppress and violate the rights of his fellow citizens.

Let me be clear that I am not defending Jeremy's actions in any way. As a professional in this field, I feel strongly that this type of action can and should not be tolerated and if one wishes to make changes to the system, they should do so within the means of the law. What Jeremy has done was wrong, and while I do not know him personally, I get the distinct impression that he feels deep regret for his actions.

It is for this reason that I write this letter to you: to ask that you show Jeremy Hammond leniency in his sentencing. Jeremy is obviously an incredibly intelligent, talented, and motivated individual. He has made serious mistakes, but given an opportunity to learn from them I see a possible future where he could emerge from this a honest member of society who is able to make great contributions to society. Giving Jeremy the maximum sentence he faces would rob him of even this possibility, and given the limited damage that was done and his honesty in facing up and owning his mistakes I strongly feel that doing so would be a tremendous loss of potential.

Thank you for taking your time to read this letter.

Matt Wilder

C 44



**New York University**
*A private university in the public service*

Gallatin School of Individualized Study

715 Broadway, 8th Floor
New York, NY 10003-6806

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 10, 2013

Dear Judge Preska,

I am a professor of media and communications at New York University, where I specialize in the use of media by political and social activists. It has come to my attention that the case of Jeremy Hammond will be before you for sentencing. There are many aspects to this case, but I am writing to day for only one reason: to ask for leniency for Mr. Hammond.

Mr. Hammond's actions, whether one agrees with them or not, were clearly undertaken as an act of protest and civil disobedience. He was motivated by his social ideals and gained no financial benefit from his act. Our country is the great country it is because we have the freedom to protest, and we evolve as a society because sometimes citizens feel it is necessary engage in civil disobedience. Mr. Hammond is one of those citizens.

I ask you to take this into consideration in your sentencing of Mr. Hammond Thank you.

Sincerely

Stephen Duncombe
Associate Professor
Gallatin School &
Department of Media Culture and Communications, Steinhardt School
New York University

C 45

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007


October 10, 2013


Dear Honorable Judge Preska:


Greetings. My name is Tara Jill Ciccarone, and I'm writing to you today in regards to the upcoming sentencing of Jeremy Hammond. I am a professor of writing at the university level and grew interested in learning more about Jeremy Hammond's case when I was designing curriculum for a writing course tailored to Criminal Justice students.  As a writer, educator, and researcher, I grew and remain concerned that the Computer Fraud and Abuse Act is mired in vagaries and does not reflect the internet as we know it today. I understand that Jeremy Hammond had pled guilty to a violation of the Computer Fraud and Abuse Act. This particular legislation is vulnerable to being manipulated to serve those with power and privilege. I live in New Orleans, Louisiana, the state that houses more criminals per capita than any other in the United States, and have seen the devastating effects maximum prison sentences can have on social justice advocates, their loved ones, and communities as a whole. It is in the spirit of justice that I respectfully request that Jeremy Hammond be sentenced with the utmost leniency because of the inadequacies of the CFAA, the moral context of the scenario of the crime itself, and the defendant's character and non-violent nature of the crime.

First, the CFAA itself is dangerous, vague, and unconstitutional.  One merely has to examine the short sentences of co-defendants in Ireland and the U.K. (not more than sixteen months) to note the unreasonable criminalization Hammond faces because of a law that is in desperate need of reform. As I am sure you are aware, the CFAA was written in 1984 and enacted by Congress in 1986. In 1984, I was attending the fourth grade in public school and did not even know what a computer was, and Jeremy Hammond had not yet been born. One does not need a comprehensive background in information technology to recognize the dramatic changes the internet has undergone and the definition of what is and is not a "protected computer." Whatever was considered a "protected computer" in 1984 does not resemble the computers and internet used in the twenty-first century. In 1984, a vague law was created that is now applied to an information highway that has organically grown into what some argue is a living entity. The undeniable need to reform the CFAA alone is a case for leniency.

1

Second, the moral context of the crime Mr. Hammond pled guilty to must be examined. Recent revelations about the NSA's PRISM surveillance program have brought the surveillance state and its violation of civil liberties to the forefront of current debate. Long before that, however, the information leaked from Stratfor revealed a frightening surveillance culture of corporate and government spying on social advocacy groups. As you know, the First Amendment grants us the right to petition our government with grievances. Many activists spied on by Stratfor were only trying to hold corporations accountable for their unethical practices. Included were the actions of many ordinary citizens who were only trying to improve their lives by demanding a living wage. These actions, which are protected under the First Amendment, apparently warranted unconstitutional spying. Surveillance directed at social advocacy groups interferes with the right to peaceably assemble and petition for a governmental redress of grievances. Surveillance systems like Trapwire exist to monitor and intimidate Americans, creating a cultural obedience with the ultimate goal of infringing upon and by proxy prohibiting freedom of speech, freedom of the press, and the right to peaceably assemble.

Surveillance networks may appear benign when examined from afar, and it was not until I personally experienced surveillance that I could comprehend the extent to which they function as tools of repression. In January of 2013, I was the First Amendment plaintiff in a winning ACLU lawsuit against the City of New Orleans. What I won was the right to hold a sign and flag that did not contain 60% NFL branding during the week of the Super Bowl. Had I not won that lawsuit, holding the American flag would have technically been illegal. Because of my participation in this lawsuit, I was monitored by the FBI while holding a sign about the economic hardships the Super Bowl inflicted upon members of the local community. I felt like my civil liberties had been stripped over reasons that had nothing to do with National Security. The fear and distress I experienced when learning that I was under surveillance surprised me even while the knowledge did not. Surveillance did not surprise me because at that time, I had already been aware of corporate-government spying because Jeremy Hammond helped the public learn about this network.

As a citizen of the United States, I am personally grateful that this surveillance network detailed in the Stratfor documents was exposed. The American public deserve to know that their Fourth Amendment right to privacy has been violated by private companies. That the Constitution of the United States has been violated by corporate clients is alarming, as is the nefarious corporate and government spying on activists. As an advocate for social justice, I believe the citizens of the United States want to trust their government. That Americans know more about private and government surveillance because of the information related to Mr. Hammond's offense is a benefit because it allows them to make more educated decisions. These decisions can now be guided by a moral compass calibrated by truth.

As you are aware, Your Honor, freedom of the press in the United States is protected by

2

the First Amendment to the United States Constitution. This clause is generally understood as prohibiting the government from interfering with the printing and distribution of information or opinions. I recognize Mr. Hammond as a source, via WikiLeaks publications on the US intelligence contractor Stratfor, for numerous media organizations in a time when our right to a free media is being stripped away. Actions against Bradley Manning, Barrett Brown, John Kiriakou, Thomas Drake, James Risen, WikiLeaks, and the Associated Press undermine basic political and journalistic freedoms. A lenient sentence for Mr. Hammond will demonstrate that the United States is not unjustly punishing whistle-blowers unilaterally.

Moreover, it is my belief that Mr. Hammond's crime was morally motivated. He has stated that "people have a right to know what governments and corporations are doing behind closed doors." Mr. Hammond did not capitalize off of the information and did not do this for his own benefit but because he was driven by the higher ideal - the pursuit of justice. His actions exemplify Civil Disobedience and reflect the values of advocates for social justice like Rosa Parks and the values of our founding fathers who wrote the Constitution and Bill of Rights.

Equally troubling in the moral context of this case is the involvement of the United States government in making the Stratfor documents available. The documented role of a confidential informant in the case orchestrated by the FBI begs the question as to why the U.S. government allowed the Stratfor documents to be uploaded to FBI servers. While the FBI had no problem allowing the Stratfor emails to be turned over to WikiLeaks, their use of an informant and nature of the "discovery" (the 3.5 million lines of text with possibly up to 45000 chat participants/co-conspirators) indicates that the United States does not want more of its secrets uncovered. It's rather troubling to not know why the FBI allowed the Stratfor documents to be released. The 14th Amendment grants all U.S. people equal protection, yet only one person is being charged with hacking Stratfor. The fact that Mr. Hammond committed a crime while ignorant of the assistance the FBI provided should be grounds for leniency in sentencing because Mr. Hammond was not fully aware of the nature of the Stratfor documents from the beginning. The FBI, however, was. It's troubling to think that one man could be sentenced to prison for ten years over a crime the United States government participated in. Since the U.S. government and FBI are receiving leniency in the way they are not being held accountable for a "hack" they orchestrated, it seems only fair that Mr. Hammond receive leniency in the form of a sentence of time served.

Also, I respectfully request that you consider a lenient sentence for Mr. Hammond because of the defendant's outstanding character. Jeremy Hammond is well-liked among people of various ages, genders, and backgrounds. Since growing interested in this case, I have been able to write many letters to Jeremy Hammond, and have enjoyed my communications with him. The sheer number of postcards and letters sent to Mr. Hammond demonstrate a love for him that cannot even be assigned to a specific

3

community. One could argue that Mr. Hammond's supporters are a secret group of "computer hackers," but this is far from the case. Mr. Hammond is admired by educators, doctors, nurses, students, activists, prison reform advocates, and citizens of all demographics. He has been repeatedly described as a kind, bright young man by those who know him.

The emotional toll Mr. Hammond's incarceration is taking on those who love him must be considered. I have come to understand that Mr. Hammond is loved by many, and that his incarceration breaks the hearts of those closest to him. Many of Mr. Hammond's supporters have worked tirelessly to ensure that he will not be forgotten, that he has money in his commissary for basic needs, that he has stamps to send letters to people. He is a man who has been separated from his loved ones for well over a year already.

It was a sincere pleasure to be present in your courtroom on April 10th and see Mr. Hammond's eyes light up when he was granted ten minutes time to spend with his mother and brother. After the courtroom emptied, Jeremy Hammond was able to turn around in his chair and face his family from his chair across and talk.  Jeremy Hammond was granted his first meeting with his mother and brother since his arrest, and it was ten minutes long. This ten minutes seemed like a precious gift and not what citizens should be able to expect from the Criminal Justice system. It is with sincere gratitude for your decision that day that I again ask you to humanely grant Mr. Hammond a lenient sentence (a sentence of time served would be ideal), so his family and friends can experience a lifetime of similar moments.

Your Honor, Jeremy Hammond is twenty-eight years old. He is obviously bright and thoughtful, and his supporters have relentlessly written to him and campaigned for his release. He has been using his time in prison to teach fellow inmates and educate himself by reading and playing chess.      I do not see how a prison sentence that is less than lenient will benefit Mr. Hammond or the state. Mr. Hammond's crime was inherently non-violent; while some may disagree with his morally motivated decisions, he is not a threat to a society in which offenders convicted of crimes like rape, child abuse, and manslaughter receive shorter sentences.

Furthermore, keeping Mr. Hammond incarcerated is a waste of tax payer money. Attorney General Eric Holder himself has acknowledged that "Too many Americans go to prisons for far too long" and has unveiled reforms to reduce the number of people sent to America's overcrowded federal prisons. Currently, PSEA-HR 2656: The Public Safety Enhancement Act of 2013, has earned bipartisan support for its potential to reduce recidivism, lower crime rates, and reduce the amount of money spent on the federal prison system. Prison reform advocates argue that "The United States Criminal Justice System is flawed, broken, yet fixable; Prison Reform and Sentencing Reform should be major agenda's for each state- we need to stop warehousing prisoners and ready those who are going to parole. Inmate rehabilitation improves public safety and

4

lowers prison costs" (Prison Reform Movement). A lenient sentence for Jeremy Hammond will release non-violent man; a maximum sentence will only provide another example of a flawed Criminal Justice System.

In recent years, the US legal system has been used more and more to target political dissidents, especially information activists. The prosecution of information activists like the late Aaron Swartz under the CFAA has made many Americans fear that the United States courts have "become part of a rigged system that favors corporations and those politically connected to them" and that "checks and balance will only come from the people" (Counterpunch). Your Honor, Mr. Hammond's sentencing awards you the opportunity to reassure the world that the United States justice system is not constantly suffering from unchecked authoritarian power. I beg you to not allow Hammond's sentencing to compound the problem that the CFAA has permitted prosecutors to exploit the law by engaging in significant over-charging.

A wise person once said, "We should reserve prison for those we are afraid of, not for those we are just mad at." I trust that, as a judge who has been nominated for The Supreme Court and who honors the Constitution, you will demonstrate that a non-violent man - a man the American public has no reason to fear - is sentenced leniently because he poses no threat to society. In your civilian court that follows the Constitution, you have the opportunity to restore some of my faith in the justice system by issuing Hammond a light sentencing.

The state gains nothing from keeping this non-violent man incarcerated for a moment longer. Giving Mr. Hammond a sentence that is anything less than lenient will only illustrate that the rule of law is irreparably broken.

I hope this letter finds you well, and again urge you to consider sentencing Mr. Jeremy Hammond with utmost leniency.


Respectfully,

Tara Jill Ciccarone, M.F.A.

10/10/2013

5

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street , New York, NY 10007

October 14th, 2013

Dear Judge Preska:

I am writing from Tunisia on the matter of the sentencing of Jeremy Hammond.

I am an American journalist, and have come to this place to tell the story of a nation trying to reinvent itself. Tunisia is trying to become a free nation after a heroic revolution threw out an autocratic dictator. It is, to say the least, a hard job. Activist and artists still routinely face jail time here. It is apparent that learning to be a free nation is a difficult and never-ending job.

Our respect for political activism, art, and dissent is something beautiful in the American story. We have always differentiated between law breaking for gain, and law breaking for principle, even when we disagreed with the principle. It is my hope we always will. Even when the crime is severe, we tell a different story about our political criminals. We remember Al Capone and the James brothers differently from the stories of John Brown or Eugene V. Debs. This is to our credit as a nation and culture, and a beautiful message to the world.

It is without question that Hammond broke the law. But it is also indisputable that he did so in the quest to make a better America. We may or may not agree with Hammond's vision of that better America, but the competition of these visions are what nourish our nation. Lawbreaking by the likes of civil rights protesters and suffragettes is why we have a biracial president, and why you and I can vote.

I covered Anonymous and the Occupy movement extensively during the time of Hammond's crime. The rhetoric of both groups was sometimes unrealistic and often sophomoric, but in an age where life or death policy and politics is often a matter of lobbying and horsetrading, I found these activists had a rare heart. Anons called each other brother and sister. They argued and fought and grandstanded to each other, but they cared, and they were willing to put their lives and honor on the line. It was the courage that makes better worlds that I witnessed in those spaces, if not yet careful political thinking. But all things start immature.

We may not approve of the methods people like Hammond have used, but we need the meaning of it in this ossified and halted American political discourse. We need to teach the next American generation to dissent; that dissent is our way.

Hammond's fate is already demonstrating that law breaking in the pursuit of political ends isn't tolerated. Let us not use him as a symbol of the breaking of dissent and the quelling of unconventional thought. If Hammond's ideas are wrong for America, let them lose in the marketplace of ideas, and not to the suppressive force of the state.

Your Honor, I will be in Tunisia for a little while longer. These people have expressed thanks to the Anonymous participants who supported them in their revolution, which I believe from my research and the reading of the indictment may have included Hammond. Let me turn to them next week and say this: America may punish law-breaking, but we support dissent, and that's what Tunisia should do, too.

Thank you,
Quinn Norton

C 51

**LatinoVision**

Vivien Lesnik Weisman

▶ **Honorable Loretta A. Preska**

Chief Judge Southern District of New York
500 Pearl Street
New York, NY 10007

October 27, 2013

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

To the Honorable Judge Preska,

My name is Vivien Lesnik Weisman, filmmaker, writer, and political commentator. I am a graduate of Barnard College, New York Law School (and accepted to the New York Bar). I hold an MFA in directing from the UCLA School of Theatre, Film and TV. My documentary films are critically acclaimed and have won the most prestigious awards throughout the world, including Grand Prix Documentary Festival Internacional du Cinema Latin de Paris, IFP Fledgling Fund Award Best Emerging Latino Filmmaker, Audience Award Vancouver International Latino Film Festival, First Coral Award Festival de Nuevo Cine Latino Americano, Grand Prix Signis awarded by the Vatican and His Holiness, as well as the Social Justice Award Finalist at The Santa Barbara International Film Festival and Tribeca.

I have appeared on countless television, radio news programs and I am a regular contributor to the Huffington Post, the news organization with the most reach in the world.

I am currently making The Reality Wars, a feature-length documentary about the targeting of activists, hacktivists and journalists by the government, and the nexus between the private intelligence security firms and the surveillance state. Mr. Hammond is one of my subjects. Stratfor is one of the private intelligence firms at the nexus.  Accordingly I have spent a good deal of time researching these issues.

I am aware that Jeremy Hammond took a plea to a maximum of 10 years for his involvement in the intrusion of the private intel security firm Stratfor. I am writing to respectfully request that Mr. Hammond be sentenced to time served.

Mr. Hammond is a so-called Hacktivist.  (H)ac(k)tivist is a combination of the word activist and hacker. Hammond is both an on-the-ground activist and an online one, or Hacktivist, fighting for anti-war, social justice and environmental causes. He put his hacking skills in service of his activism.  In order to explore the essence Mr. Hammond's case, I believe it is important to explain what private intelligence security firms are. They are for-profit firms that contract with corporations and governments. They are mercenary intelligence outfits. They offer their services to the highest bidder nations and corporate clientele and foreign countries including China, and Korea.

 The United States also contracts with these firms. US government agencies routinely outsource what used to be done in-house. The FBI, CIA, DoD, and Homeland Security contract with these firms. After 9/11, outsourcing skyrocketed. It is estimated that 70% of U.S. intelligence work is done with outside, contracted companies. Those

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

C 52

are these estimates from 2006 and the trend continues to grow. Gone are the days when the CIA and FBI were in charge of intelligence and law enforcement.

Outsourced intelligence work has no form of congressional oversight or regulation, or any other kind for that matter. These companies operate in the shadows and, as the Stratfor hack revealed, are involved in criminal behavior. In other words they are above the law. When under contract for the US government, they do what would be illegal for the government to do itself. A convenient byproduct: the government is given the ultimate plausible deniability, which simply means they can outsource whatever they do not want to know.

Jeremy Hammond is a political dissident. He violated the CFAA in order to make a political statement. His motivation was not personal or pecuniary enhancement.. He wanted the public to know about the criminal behavior that our government colludes to keep out of our reach. When Rosa Parks refused to sit in the back of the bus she did so knowing she was in violation of the law. Similarly, Jeremy Hammond knowingly violated the law in order to expose greater criminality. He is oft quoted saying that he must work quickly before the government stops him. This is not a statement made by someone who is unwilling to take responsibility for his acts.

I have met Jeremy Hammond.  I have spent time with him. I know that his motivations were not unlike the motivations of Rosa Parks, who also broke the law.  I am not seeking to unduly lionize Mr. Hammond,  I just wish to convey that he truly believes his actions were directed towards making a change in the world to benefit us all.

The case of Jeremy Hammond is illustrative of a trend to target, overcharge and come down hard on those the state perceives as threatening. The supposed threats are due to their beliefs and/or actions toward information freedom for the benefit of society at large. In the increasingly growing number of (h)ac(k)tivist cases, Mr. Hammond's case is most closely associated with that of Barrett Brown. Brown is a journalist facing charges totaling 105 years for his journalistic work. He was also involved in exposing the criminality of Stratfor and other private intelligence firms. Other related cases are those of information activist Aaron Swartz and Internet troll Andrew "weev" Auernheimer. weev was sentenced to 41 months under the CFAA for embarrassing a corporation. It is widely believed that Mr. Aurenheimer's appeal will strike down the CFAA as a constitutionally vague and draconian law.

 In 2008, Aaron Swartz, information freedom activist downloaded and released 2.7 million court documents stored on the PACER database. He believed the public had a right to access this information. In 2013, Aaron Swartz committed suicide after a long struggle with the US government over a similar release of data. Mr. Swartz was aware that his actions were CFAA violations. Like Mr. Hammond he did not believe his acts were wrong; illegal yes, but not wrong. Unlike Aaron Swartz, connected and widely admired whose persecution has inspired the US Congress to propose "Aaron's Law", Jeremy Hammond is an indigent defendant. Still both are examples from opposite poles of the economic spectrum of the criminalization of dissent and the systemic failure of the rule of law.

The aforementioned cases are near perfect examples of prosecutorial overreach. The case for prosecutorial overreach is not that the defendants did nothing illegal. The issue with prosecutorial overreach is that the punishment is disproportionate to the alleged acts and/or that the prosecution is being pursued for improper purposes. That's particularly true in Mr. Hammond's case when viewed next to the more egregious criminality that the Stratfor hack exposed.

Both prongs of prosecutorial overreach are present in Mr. Brown's, Mr. Aurenheimer's, Mr. Swartz's and Mr. Hammond's case. More importantly, all of these cases including Mr. Hammond's are fueled by the same improper purpose: the desire to use the law as a weapon to both deter and severely punish those who challenge the

government's power to control information on the Internet and in Brown's and Hammond's case expose criminality. All of these cases are political as is the excessive prosecution.

In Latin America, there is a distinction made in the prison system between common criminals and political prisoners. Sadly, the overzealous prosecutions of Jeremy Hammond, Barrett Brown, Aaron Swartz and Andrew "weev" Auernheimer seem to indicate that we should begin making that distinction in the United States as well.

Your Honor, there is much more at stake here than the fate of Mr. Hammond. What is at stake is the very essence of a civilized society; the rule of law. It is now in your capable hands to turn back the tide of these overzealous and politically motivated prosecutions and hand down a just and appropriate sentence  – time served.

Very Respectfully,

Vivien Lesnik Weisman

**LatinoVision**

C 54

# FITZGIBBON MEDIA

Break Out, Break Through

Dear Judge Preska,

My name is Trevor FitzGibbon. I am the President of FitzGibbon Media, an organization I began to provide a domestic and public relations strategy around cutting edge political, human rights and environmental campaigns. We have worked closely with the Chelsea Manning Defense Committee and in support of Julian Assange and WikiLeaks. As such I am full familiar with the difficulties faced by whistle blowers and journalists, brave individuals who risk their lives in the belief that people should know about wrongful actions of the government and its surrogates.

I believe that Jeremy Hammond has acted in this tradition. Recognizing the penalities he might face he risked his liberty to reveal what was happening behind closed doors. He is a political activist in the finest sense and fought for transparency though civil disobedience.

I know that he has pled guilty to violating the CFAA and faces a maximum sentence of ten years. I believe his action have advanced our understanding of how private intelligence companies operate with impunity and ask you to be lenient in his sentencing as his actions were not for personal gain, but to achieve a social good.

I believe that when released Jeremy will pursue legal means to continue to advance his vision of a better world.

Thank you for allowing me to provide my opinion.

Respectfully,

Trevor FitzGibbon
Founder & President

Kevin M. Gallagher

October 15, 2013

Honorable Loretta A. Preska
Chief Judge
Southern District 0f New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska,

I am a writer, computer professional and activist based in western Massachusetts.  I graduated from UMass, work in IT, and my work has been published in a variety of places; but most importantly I direct a not-for-profit legal defense fund and advocacy organization for the imprisoned journalist, Barrett Brown. Over the past year my work has helped raise tens of thousands of dollars and resulted in major media coverage, as well as support from very prominent and reputable press freedom and human rights organizations.

Importantly, Mr. Brown and a crowd-sourced journalistic research project he founded with many participants, are among those who analyzed the e-mails released from Stratfor by Jeremy Hammond. They came to the conclusion, shared by myself and many others, that the release was in the public interest. No doubt, the Stratfor e-mails made available as a result of Hammond's actions have benefited scores of journalists and resulted in numerous stories. They are frequently cited as a source by outlets on all sides of the political spectrum. We are now better informed and able to make decisions as a population because of them. In particular, we know more about the activities of private intelligence firms, which frequently receive government contracts and taxpayer dollars, because of Jeremy.

There is no question that the law was broken, the privacy of Stratfor's employees was breached, and the company suffered grave damages. However, I believe that Jeremy's acts must be weighed against the spying on private citizens done by Stratfor which was exposed, and against their failure to properly secure their systems and customer information (for which they rightly were subject to a lawsuit). I believe that Jeremy was only exercising civil disobedience as part of a worldwide movement for transparency that has inspired millions of people across the globe. He did not gain anything financially or materially from it.

C 56

What I understand of Jeremy's personality and character makes him very respectable and admirable to me. He is someone who cares about humanity and improving the state of affairs. He is passionate about advancing the interests of the common people and their rights, in the face of powerful corporations and governments. I think that if he were released, he would be an asset to the community, as he is prepared to make sacrifices of himself in order to help other people. To meet someone as caring and selfless as Jeremy Hammond is rare in today's society.

Therefore, when you're sentencing Jeremy, I implore you to please be lenient. Search your conscience and ask yourself whether this bright, intelligent young man should not be given a second chance to rebuild his life. I think that he has already served enough time for his transgressions, and that he has a great potential to be reformed under the terms of probation or a supervised release. I don't believe that he is at risk of engaging in criminal hacking ever again.

While it might be tempting to set an example as a deterrent to others, I assure you that his arrest and detainment have already had enough deeply chilling effects. I think that the maximum punishment would serve no productive purpose, and the world would be losing out on someone very smart and talented. I am far from alone in these sentiments – I know that Jeremy has the support of thousands of people, from every place and walk of life. Involving as it does the serious matter of a young man's life and future, I hope that you will sincerely consider my plea for leniency, and I expect that after weighing these things carefully, that the sentence you reach in this case will be fair and just according to the highest ethical standards of your honor.

Respectfully,

Kevin M. Gallagher
Director, Free Barrett Brown

C 57

October 15, 2013

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska:

I am writing to you in regard to Jeremy Hammond. I don't know Jeremy personally. However, I have spent many years working in or doing research on the criminal justice system. My first job on graduating from college was as a prison officer at the Connecticut State Prison for Women in 1971. I later wrote a book on the impact that working in prisons has on officers (*Prison Officers and Their World,* Harvard University Press, 1988) and have published frequently on prisons in the years since. I worry deeply about the overuse of prisons as a sanction for an ever-increasing number of crimes with ever-harsher sentences.

I also have a more personal reason for my concern about Jeremy's case. I knew Aaron Swartz well and, through him, have been privileged to know some of the most remarkable young men of his generation, all of them technically brilliant and deeply idealistic. While some of their choices may not have been the best, I consider them to be national treasures. I'm not arguing that they should be granted immunity for actions that violate the law, but rather that we should be proportionate, fair and compassionate in guiding them. I think we also need to recognize the extent that our generation's understanding of the Internet is different from theirs, and not necessarily superior. The CFAA is a case in point, as is the vastly disparate treatment by our criminal justice system of corporate and government misuse of private data versus youthful actions taken to expose that misuse, especially where no effort was made for personal gain.

Having had many opportunities to observe the effects of prolonged solitary confinement, especially on young people, I also worry deeply about Jeremy's mental health and feel sure that he has been punished enough; certainly more than he would have been in almost any other Western nation.

Respectfully,

Kelsey Kauffman

C 58

LAW OFFICES

## JAMES R. FENNERTY
## & ASSOCIATES, L.L.C.

36 S. WABASH  SUITE 1310
CHICAGO, IL 60603

312-345-1704
FAX: 312-422-0708

October 15 2013

Judge Loretta Preska
United States District Court Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:    Jeremy Hammond

Dear Judge Preska:

My name is James R. Fennerty and I am an attorney who is licensed to practice both in Federal Court and the State of Illinois for over 41 years. In 2010 I came to know Jeremy Hammond when I represented him and other young men who were charged for disorderly conduct. The incident came about when Jeremy and the other young men went to a German restaurant in a Chicago suburb where David Irving was speaking. Mr. Irving is a writer who has written over thirty books most of them are about denial that the holocaust in Germany ever happened. It is my understanding that Mr. Irving was in Chicago to address a neo-Nazi group. Jeremy and his friends went into the meeting and started chanting that there was a holocaust and through fake blood on the books Mr. Irving brought to sell to the group.

As a result of the above incident Jeremy was arrested and charged with disorderly conduct. In court Jeremy plead guilty and was sentenced four days in the Cook County Jail. Due to good behavior he only served two days of that sentence.

Following release from the Cook County Jail Jeremy received notice of a rule to show cause hearing for violation of the terms of his supervised release from federal prison. Jeremy had served two years in a federal prison for hacking into computers of right wing organizations. This matter was before Judge James B. Zagel a judge for the Northern District of Illinois. I also represented Jeremy in this case.

At the first appearance before Judge Zagel the judge commented that he was familiar with the writings of David Irving. In fact he told us that he had spoken on a panel in London, England where he spoke about the writings of Mr. Irving. Judge Zagel never violated Jeremy's conditions of release for this arrest and on May 20, 2011, after several court appearances Judge Zagel terminated Jeremy's supervised release.

*I also* represented Jeremy when he was arrest in December of 2110 for possession of marijuana and of marijuana paraphernalia. He was in custody and when the case was called the assistant state's attorney asked for a continuance. When I pointed out that the laboratory report in the court file showed that the substance was not marijuana both charges were nolle prosequi.


In the course of my representation I came to really like Jeremy because even though I did not approve of his tactics I did respect that he tried to do the right thing when he saw an injustice. He was against neo-Nazis. Nothing he did was for personal gain. I am not justifying what he did, but I feel that Jeremy deserves some leniency. He is actually a good person who cares about the poor and injustices in this country and around the world.


Sincerely,

James R. Fennerty

C 60

**Carne Ross**

████████████████████████████████
████████████  ████████████████  ████████
███████████████████████████████████████████

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 21st, 2013

JEREMY HAMMOND

Dear Judge Preska:

I am a former senior British diplomat and head of a non-profit diplomatic advisory group, headquartered here in New York, that advises democratic governments and countries around the world.  I have come to know about Jeremy Hammond's case and want to appeal to you to minimize the sentence he must serve for his violation of the Computer Fraud and Abuse Act.

As a British citizen, but US resident, I have followed Jeremy's case closely.  I am aware that those convicted of the same crime in the UK will spend no more than 16 months in prison, and that his co-defendants in Ireland will not be prosecuted at all.  I am concerned that sentences associated with the CFAA are in general grossly disproportionate to the harm done by violations thereof, and in this case in particular. As you know, Jeremy personally sought no personal benefit or financial gain from his act which was instead motivated by his political beliefs.

I am sure that you will bear these points in mind as you consider Jeremy's sentence.  I trust that you will act with compassion towards a young man who has, in my view, already paid considerably for his actions.

Thank you.

Yours sincerely,

Carne Ross



Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

October 7, 2013

Dear Judge Preska,

I am writing regarding the sentencing of Jeremy Hammond for violations of the Computer Fraud and Abuse Act and to request leniency in the length of the jail sentence.

As the executive director of Media Alliance, a 37-year-old democratic communications advocacy nonprofit, I work with and represent many who are deeply committed to freedom of information. While I do not know Jeremy Hammond personally, I am acquainted with many who share his concerns and his commitment to speaking out strongly on the issue. While a line was crossed into illegal behavior, the motivation behind the actions was one shared by many people. I think we speak as one in asking for a proportional response from the criminal justice system.

Mr. Hammond's co-defendants in Ireland and the United Kingdom will be serving sentences of a maximum of two years. In this case, I think we should consider the example of the UK in formulating a proportional and appropriate punishment for the crime in question, which was undertaken as an act of politically-motivated civil disobedience and for no financial gain.

We have seen in the Aaron Swartz case that disproportionate responses to acts of civil disobedience can cause great and unnecessary suffering. The limitations of the Computer Fraud and Abuse Act, which protects corporations to a greater extent than individuals, should not be used to throw the book at acts of civil disobedience by generating long sentences in excess of the severity of the illegal act committed.

Thank you for taking these thoughts into consideration.

Sincerely,

Tracy Rosenberg
Executive Director



C 62

Mustafa Al-Bassam



**Honorable Loretta A. Preska**

Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska:

My name is Mustafa Al-Bassam and I was a co-defendant in the UK-based prosecution of Anonymous/LulzSec that concluded in May of this year. I am rehabilitated and currently a 1st year student at King's College London undertaking a Computer Science MSci degree.

Although I only briefly communicated with Jeremy Hammond on Internet Relay Chat (as his criminal activities in question occurred after I was arrested) and perhaps I do not know him as well as later co-conspirators or people close to him, I do feel obliged to make you aware of the punishments received by UK co-conspirators for your consideration.

I write today at the request of Jeremy Hammond's lawyers. I am told that many people have written letters comparing the sentences in England to the one Jeremy might receive. I was asked to confirm what the actual sentences were. I can confirm that I was sentenced to a 20 month suspended term, as I was a juvenile at the time the crimes I pled guilty to were committed. I was in the courtroom when Jake Davis was sentenced to two years of prison, to be served in a youthful offender facility. I am aware that he served 38 actual days. I also witnessed Ryan Ackroyd get sentenced to 30 months and Ryan Cleary get sentenced to 32 months. Those sentences are to be served at 50%, so Ryan Ackroyd will serve 15 months and Ryan Cleary will serve 16 months. I would ask that you please take that into account when sentencing Jeremy Hammond.

Even though the UK-based prosecution covered a much greater range of victims and attacks than Jeremy's prosecution (I was arrested a total of 82 times in one go for each suspected attack), I feel that the punishments we received were extremely fair and proportionate given the actual damage caused and motives; that is not to say our punishments were light – rather the opposite even by the world's and other countries' standards.

Yours sincerely,

*Mustafa Al-Bassam*

**Mustafa Al-Bassam**
10/15/2013

C 63

Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

11 October 2013

Dear Judge Preska:

My name is Scott Arciszewski and I am a Computer Programming and Analysis student at
Valencia College in Orlando, FL. In July 2011, I was arrested and ultimately prosecuted for
hacking into the computer systems used by InfraGard Tampa Bay, a website used by the
Federal Bureau of Investigation, and sentenced to probation and house arrest. While my
actions were reckless and regrettable, it is my hope that my insights and experiences could
be utilized through the transmission of this letter to help decide a fair sentence for Mr.
Jeremy Hammond.

From my understanding, Jeremy's political beliefs are self-proclaimed anarchist, and all of
his criminal actions were politically motivated. Indeed, he did not derive a personal profit
from the execution of his criminal activities or choices. While the prosecution may feel that
this does not excuse his actions, I believe it does offer great insight into Jeremy's crime and
a suitable rehabilitation. My theory is as follows: He has lost faith in our American system.
He lost faith in our system because he has seen it in action. Anarchists see authority figures
as adversaries to be challenged and, where they do not possess true leadership traits,
conquered. In a way, there is nothing more authentically American than an anarchic streak
in one's political views.

A suitable criminal rehabilitation, in my view, is not merely one that imposes an
inconvenience, restriction of liberty, and debt upon Jeremy Hammond; but rather, one that
refocuses his brilliant mind and rekindles his passion for our great Nation. Show him that
compassion exists in the shadow of the corruption that hogs the limelight of our news
media.

"Do I not destroy my enemies when I make them my friends?" – Abraham Lincoln

Jeremy Hammond is a brilliant young man, and he has a lot to give to this world. But he
cannot do anything for anybody unless he is given a chance. Therefore, I would like to
recommend a sentence heavy on the community service, lean on the imprisonment. If at all
possible, keeping Jeremy in prison for less than 30 months (currently the longest sentence
of any of his overseas co-conspirators) would be ideal.

Thank you for your time reading this letter. I trust you will make the right choice for America, for those hurt by Jeremy's actions, and also for Jeremy's future.

Sincerely,

Scott Arciszewski

Honorable Loretta A. Preska
Chief Judge Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska:

My name is Raynaldo Rivera. I was a co-conspirator in the US-Based prosecution of
Lulzsec concerning attacks against Sony Pictures that occurred during May and June of
2011. I am currently employed at Cummings Engineering, a computer company that
develops secure communication for both the private and government sectors. I will
retain this job once I have served my impending prison sentence. I have rehabilitated
myself after leaving Lulzsec and live a honest and full life now. I understand and
accept that I am to be punished for my involvement with Lulzsec.

Although I do not know Jeremy Hammond personally and I only talked to him briefly on
Internet Relay Chat, I feel that you should be aware of the sentence that myself and
Co-Conspirator Cody Kretsinger received for our involvement with Lulzsec.

Kretsinger and I were both sentenced to a year and a day in federal prison, one year
of home detention, three years of supervised release, One thousand hours of community
service, and $653,000 in restitution. Compared to the other Lulzsec prosecutions Mr.
Kretsinger and I have received the among the harshest of sentences. I ask that you
please take our sentences into account when determining the appropriate sentence for
Jeremy Hammond.

I feel it is important to note that although the sentence was harsh I believe it to be
a fair and appropriate punishment for the involvement that Mr. Kretsinger and I had.

Yours sincerely,

Raynaldo Rivera

Donncha O'Cearbhaill



Honorable Loretta A. Preska
Chief Judge
Southern District of New York
500 Pearl Street
New York , NY 10007

Dear Judge Preska:

My name is Donncha O'Cearbhaill and  I was a co-conspirator named in the Anonymous / Lulzsec indictments unsealed in the SDNY on the 6th March 2012. I was also charged for the relevant offenses by the Irish authorities. I am writing to you today at the request of Jeremy Hammond's lawyer's to provide some background on my experience with the Irish criminal justice system when I was charged for computer hacking offenses.

After a significant investigation, I was arrested and charged along with my Irish co-defendant Darren Martyn of criminal damage on the website FineGael2011.com, belonging to major political party in the Irish government. Our case was the first prosecution for computer hacking in Ireland and was heard at the district court level, the lowest court in Ireland. At our preliminary hearing we were both released on bail of our own bond.  Like Jeremy we both entered guilty pleas, and subsequently the judge directed that we engage with the Restorative Justice section of the Probation Services.

My engagement with them included providing a formal apology to the victim and doing some writing about my understanding of how the offense affected the victim, my family and my own life. As a part of the program I also carried out community service by providing technical help to a number of resource stretched voluntary groups with their websites.

On my final return to court, I paided the victim €5000 in damages as directed by the court.. The judge then struck out the case to allow us to move forward in our lives without a permanent criminal record. This decision will allow me to continue to try and improve my live without the permanent tarnish that a criminal conviction would bring.  I think the Irish prosecution was a fair and proportionate response to our offense which were like Jeremy's, was not for personal gain.

I did not know Jeremy well. In particularly I have no insight as to his offense which occurred after I had been arrested. I am simply writing to provided perspective on on how these type of offenses were prosecuted in other jurisdictions. Jeremy has already spent more than a year and a half of his life in federal custody while his case has been progressing through the court system. All I ask is that you are cognizant to the sentences Jeremy's co-conspirators have received in other jurisdictions and that you show leniency to Jeremy in your sentencing on November 15th.

Yours sincerely

Donncha O'Cearbhaill

---

Donncha O'Cearbhaill